UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul SCHUMPERT, Defendant–
Appellant.

No. 91–1895.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1991.

Decided March 16, 1992.

Joseph Hartzler (argued), Chicago, Ill., David E. Risley, Springfield, Ill., for U.S.

Ronald J. Stone (argued), Stratton, Dobbs, Nardulli & Lestikow, Springfield, Ill., for Paul Schumpert.

Before FLAUM and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Paul Schumpert was indicted along with David Scott and Ilmi Fejzoski on one count of conspiracy to possess and distribute cocaine, and one count of attempting to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1). Fejzoski plead guilty. Schumpert and Scott went to trial. Scott was convicted on both the conspiracy and attempt counts, while Schumpert was found guilty only of participating in the conspiracy. Schumpert now appeals his conviction on several grounds. We affirm.

### I.

The events leading up to Schumpert's arrest began when David Avery agreed to cooperate with the Drug Enforcement Administration ("DEA") to set up Fejzoski. In October 1989, Avery telephoned Fejzoski in Chicago from Springfield, Illinois to arrange a drug deal. The two had several tape-recorded telephone conversations that day during which Fejzoski agreed to purchase cocaine from Avery.

The transaction was arranged to take place in Springfield. During one recorded conversation Fejzoski told Avery that he would be traveling to Springfield with his buddy, "a black guy," who owned People's Cab Company. David Scott, who is black, was part-owner of this cab company. Fejzoski said that they planned to travel in a Corvette which had a car phone; his buddy would be driving. In another conversation, Fejzoski stated that three people would be

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

there for the deal and that the third person would drive the cocaine back to Chicago. He summed up the way the transaction would progress as follows: "I get it from you, I get in the car, give it to the other guy, you know, he follows us, or we follow him, out this way again, you know." Avery testified at trial that Fejzoski would often have someone else transport the drugs because "he didn't want to get his hands dirty."

At 1:30 p.m. on October 24 Fejzoski telephoned Avery to say he was on the way to Springfield in a red Corvette. Surveillance agents observing from overhead saw a red Corvette followed by a white Cordoba head south on Interstate 55. Later Fejzoski called again and spoke to DEA Agent Rick Miller, who identified himself as Avery's friend. Fejzoski told Miller that he was going to make a stop at a gas station at Exit 98B. Agents saw the Corvette followed by the Cordoba take a circuitous route to a Shell station. A black male got out of each vehicle and filled their respective cars with gas. Both cars left the gas station at the same time and headed to a Hardees restaurant which was across the street from a K–Mart store parking lot.

Fejzoski called Agent Miller to tell him that he was in the Hardees parking lot. Agent Miller said that Avery would meet Fejzoski under the K–Mart sign near the street. The Corvette was driven across the street to the K–Mart lot while the Cordoba remained parked at the Hardees. Deputy United States Marshal Bruce Harmening, who was watching the Cordoba, observed a black man in a white shirt and dark pants, who appeared to be one of the men he had seen at the Shell station, standing in front of the car looking in the direction of the K–Mart lot.

Avery and Agent Miller showed up at the K–Mart lot, and Fejzoski met Avery at the rear of the Corvette. They spoke for a minute and then Avery went back to Agent Miller's car and told him that he had seen money on the Corvette's passenger seat.

Agent Miller gave an arrest signal and federal agents arrested Fejzoski and Scott.

Agents crossed Clear Lake Avenue and drove into the Hardees parking lot. No one was near the Cordoba. The agents went into the Hardees and were told that a black man wearing a white shirt had run through the restaurant and out the back door. They left through the back door of the restaurant and saw a black man running across the parking lot. The agents ordered the man to stop and he was placed under arrest. He later identified himself as Paul Schumpert.

A brown paper bag containing $54,450 and a pager subscribed to by Schumpert were found in the Corvette. The government obtained a phone record which showed that a phone call had been made from Scott's residence, the home of Cheryl Fondon, to a pager leased to Schumpert two hours before the trip to Springfield.

At trial, Schumpert presented Theresa Holmes as a witness. She testified that on October 24 Schumpert was on his way to her home in Decatur, Illinois to redecorate a room for their daughter.

## II.

■ Schumpert argues on appeal, as he did before trial, that there was not probable cause sufficient to support his warrantless arrest. The district court, relying on the affidavit of Deputy Marshal Harmening, denied Schumpert's pre-trial motion to quash his arrest stating that the affidavit established probable cause.[1] We review this finding de novo. See, e.g., United States v. Soto, 908 F.2d 209, 211 (7th Cir. 1990).

Police have probable cause to arrest when, at the moment of the arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91,

---

1. The district court did grant Schumpert's motion to suppress his post arrest statements because he was not advised of his rights consistent with the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). "While probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity,' mere suspicion is not enough." *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir.1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

The circumstances linking Schumpert to the cocaine transaction at the time of his arrest gave agents reason to have more than a mere suspicion about his involvement in the deal. Although Fejzoski never identified Schumpert by name, agents knew that Fejzoski planned to have a third person, driving a separate car, involved in the scheme. Schumpert's drive to Springfield tailgating the red Corvette, including following the Corvette to the gas station and the Hardees showed that he was not just a bystander when he stood focused on the events at the K–Mart from his vantage point in the Hardees parking lot. Schumpert also took off through the Hardees restaurant after federal agents converged on the Corvette, from which it could be inferred that he was attempting to avoid arrest. Clearly he was more than merely present near the scene. Given these facts, the district court did not err in refusing to quash the arrest.

█ The district court also properly admitted Fejzoski's out-of-court statements under Rule 801(d)(2)(E). Rule 801(d)(2)(E) allows admission of co-conspirator statements if the government demonstrates by a preponderance of the evidence (1) that a conspiracy existed; (2) that the defendant and declarant were members of the conspiracy and; (3) that the offered statements were made "during the course of and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175–6, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). A district court's factual determination as to the existence of these elements is only reversed if it was clearly erroneous. *United States v. Hogan*, 886 F.2d 1497, 1504 (7th Cir.1989).

Schumpert objected to the admission of these statements pretrial and the district court, after holding a hearing, denied the motion. Schumpert contends that there was not sufficient evidence to show he was involved in a conspiracy. In order to prove Schumpert's involvement in a conspiracy the government needed to show that he "(1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme." *United States v. Sullivan*, 903 F.2d 1093, 1098 (7th Cir.1990). "[M]ere knowledge of, approval of, association with, or presence at a conspiracy is insufficient" to show that he was a participant. *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir.1990).

Although the evidence connecting Schumpert to the scheme was largely circumstantial, this evidence was nonetheless sufficient to warrant the district court's finding by a preponderance of the evidence that there was a conspiracy of which Schumpert was a member. The government did not need to prove that there was a formal agreement. *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). Circumstantial evidence is often the only proof from which a defendant's involvement in a conspiracy may be inferred. *E.g. United States v. Mealy*, 851 F.2d 890, 896 (7th Cir.1988). Moreover, a court may consider the hearsay statements themselves in determining whether they may be admitted. *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2781–82. Fejzoski's statements in conjunction with Schumpert's own conduct and the pager evidence created a strong inference that Schumpert was a participant in the conspiracy.

█ Schumpert further contends that there was insufficient evidence to support his conspiracy conviction. A claim of insufficient evidence requires an appellate court to determine, "after viewing the evidence in the light most favorable to the prosecution [whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court has held that there must be "substantial evidence" to connect a defendant to a conspiracy in order to affirm a conviction. *Durrive*, 902 F.2d at 1228.

The evidence against Schumpert was not overwhelming. But when viewed as a whole there was substantial evidence based on which a rational juror could find that he was a member of the conspiracy. He tailed the Corvette from Chicago to Springfield, to the gas station and to the Hardees; he waited at the Hardees and remained intent on the events in the K–Mart parking lot and; he dashed through the Hardees when Fejzoski and Scott were apprehended. The pager evidence also served to connect Schumpert to Scott and Fejzoski. This evidence was a substantial basis for the jury to find that Schumpert was the third person who was going to do the dirty work and carry the drugs back to Chicago. Moreover, since traveling via Springfield is not the most direct route from Chicago to Decatur, the jury also could very reasonably doubt the testimony of Theresa Holmes.

The same evidence also supports the district court's refusal to grant Schumpert's motions for a new trial and for an acquittal. Schumpert's counsel also argued in his brief, though apparently abandoned this contention at oral argument, that his post-trial motions should have been granted, or at least a hearing should been held, because the jury's finding that Schumpert was not guilty on the attempt count was inconsistent with his conviction on the conspiracy count.[2] Since Schumpert does not assert that there was any external influence on the jury's deliberations, this argument is without merit. *See United States v. Scop*, 940 F.2d 1004, 1007 (7th Cir.1991); *United States v. Ford*, 840 F.2d 460, 465 (7th Cir.1988).

### III.

Based on the foregoing, the district court is AFFIRMED.

---

**2.** Schumpert's motion for judgment of acquittal and motion for a new trial were based in part on the affidavit of reporter Pat England. She stated that she interviewed the jury foreperson about the verdict and he indicated that the jury acquitted Schumpert on the attempt count because they were not certain that he knew a controlled substance was involved.