In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3338

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC SCHUSTER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cr-00045—**Barbara B. Crabb**, *Judge*.

ARGUED FEBRUARY 14, 2012—DECIDED FEBRUARY 4, 2013

Before EASTERBROOK, *Chief Judge*, BAUER, *Circuit Judge*,
and CHANG, *District Judge*.[*]

CHANG, *District Judge*. Eric Schuster pleaded guilty to
knowingly using a minor to produce child pornography.
18 U.S.C. § 2251(a). The district court sentenced him

[*] The Honorable Edmond E. Chang, Judge of the United States
District Court for the Northern District of Illinois, sitting
by designation.

to nearly 22 years of imprisonment. On appeal, Schuster challenges the sentence on four grounds: (1) the district court erred in finding that he distributed certain of the child pornography that he produced; (2) the distribution of other child pornography was not "relevant conduct" under the Sentencing Guidelines; (3) the district court erred in finding that a certain other photograph that he took of a young boy constituted child pornography (this finding impacted the Sentencing Guidelines calculation); and (4) the sentence is unreasonable. We reject all of the arguments and affirm the sentence.

## I.

In December 2010, law enforcement agents in the Netherlands arrested a prolific manufacturer of child pornography, Roberts Mikelsons. Mikelsons cooperated with the authorities and provided leads against other individuals who exchanged child pornography with Mikelsons. Eventually, Department of Homeland Security agents in the United States identified Eric Schuster as one of Mikelsons's trading partners. The agents obtained a search warrant for Schuster's home, and the search yielded his computers, digital cameras, and a variety of storage devices and media, including SD memory cards for the cameras. Among other images, the SD cards contained three series of digital photographs that are directly relevant to the appeal.

The first series shows a small prepubescent boy lying on his back on a blue sheet on a bed. The boy is wearing a white shirt and red shorts with the word "lifeguard"

printed on the shorts. A note card lies on the boy's stomach; the card says, "Hello Alex" (Alex is not the name of the victim, but is instead the name of the person to whom Schuster, the district court held, distributed the photos). Additional images show the boy's shorts pulled down, exposing his penis and testicles. Other images in this "Hello Alex" series show a note card on the boy's leg, and this card says, "Alex do you like my cock?"

The second series shows three minor boys in a bathtub. In one of the images, a two-year-old boy is squatting in the tub, and the image shows him from the chest-down to his knees (his head is not shown in the photo). The photo is taken on a downward angle, and shows the two-year-old boy's genitalia.

The third series shows three young boys sleeping on a bed. Four photos in this series show Schuster's hand exposing the penis of one of the boys. The boy was six years old at the time. In the series, the penis becomes erect, and in one the later images, the boy's erect penis is wet.

A few weeks after the search warrant's execution, a grand jury indicted Schuster on two counts. The first count charged Schuster for using a minor to produce child pornography, specifically, for using the boy in the "Hello Alex" series to create the images. 18 U.S.C. § 2251(a). The second count charged Schuster with knowingly possessing child pornography, namely, the "Hello Alex" series. 18 U.S.C. § 2252(a)(4)(B). Schuster pleaded guilty to the production count. The district court held a thorough sentencing hearing, and ultimately sentenced

Schuster to 262 months' imprisonment, along with a lifetime of supervised release.

## II.

### A. Use of Schuster's Statement to Prove Distribution

Schuster's first challenge to the sentence is that the district court erred in finding that Schuster distributed the "Hello Alex" series of photos; the finding increased his Sentencing Guidelines offense level. Specifically, Sentencing Guideline § 2G2.1 applied to the manufacturing conviction. Under that guideline, two offense levels must be added if the "offense involved distribution." USSG § 2G2.1(b)(3). We review the district court's interpretation and application of the Sentencing Guidelines *de novo*, but the ultimate finding of distribution is reviewed only for clear error as a finding of fact. *United States v. Carani*, 492 F.3d 867, 875 (7th Cir. 2007). "'A finding of fact is clearly erroneous only if, based upon the entire record, we are left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006)).

During the sentencing hearing, Schuster argued that there was insufficient evidence that he had distributed the "Hello Alex" series. But the most damning evidence of distribution was Schuster's own statement that he did so. The day before sentencing, Schuster filed a handwritten letter addressed to the District Judge. USDC 11-cr-00045, Docket Entry 36. The letter was in the nature of a pre-sentencing written allocution, wherein Schuster

discussed the crime and his personal reactions to what he had done. The letter stated that an internet chat acquaintance asked Schuster to take the "Hello Alex" series of photos, and although he initially refused the request, after more requests from the same person, Schuster did take the photos. *Id.* In the letter, Schuster claimed to be "physically ill about doing this *after sending the pictures* to the requesting person." *Id.* (emphasis added). Not surprisingly, the district court relied on that admission in finding that Schuster distributed the series. Sentencing Tr. 17-18. The district court also relied on the fact that the content of the photos themselves showed that Schuster prepared the photos for distribution. *Id.* at 18. Remember that some of the photos contain note cards laid on the boy's body, and the cards bore messages to the intended recipient of the series. Not only were there greetings ("Hello Alex"), but also one of the cards specifically linked the sexual nature of the series with the intended recipient ("Alex do you like my cock?").

Against all this, Schuster argues that the letter to the District Judge was inadmissible because the letter was covered by a proffer agreement between Schuster and the government. It is true that Schuster and the government did enter into a proffer agreement on August 22, 2011. Broadly stated, under the proffer agreement, Schuster agreed to provide (that is, "to proffer") information concerning the ongoing child pornography investigation in exchange for the government's agreement not to use the proffer statements against him in any trial and not to use the statements in aggravation of his sentence. That latter aspect of the proffer agreement is

based on Sentencing Guideline § 1B1.8(a), which recog-
nizes the use of proffer agreements between defendants
and the government, and states that proffer-protected
"information shall not be used in determining the ap-
plicable guideline range, except to the extent provided
in the agreement." USSG § 1B1.8(a). Proffer-protected
information cannot be used to increase a guideline
range even if it is the defendant who provides the infor-
mation to a probation officer during the presentence-
report preparation. § 1B1.8, appl. n.5.[1] We too have recog-
nized the validity and enforceability of proffer agree-
ments, *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir.
2008), which allow defendants to advance plea negotia-
tions by providing information that may otherwise be
used directly against them, and at the same time allow
the government to consider the information in assessing
whether to enter into a plea agreement or other sen-
tencing agreement with the defendant. In light of the
importance of proffer agreements to the plea-bargaining

---

[1] Application note 5 states: "This guideline limits the use of
certain incriminating information furnished by a defendant
in the context of a defendant-government agreement for the
defendant to provide information concerning the unlawful
activities of other persons. The guideline operates as a
limitation on the use of such incriminating information in
determining the applicable guideline range, and not merely
as a restriction of the government's presentation of such
information (*e.g.,* where the defendant, subsequent to having
entered into a cooperation agreement, provides such infor-
mation to the probation officer preparing the presentence
report, the use of such information remains protected by
this section)."

process, we do hold the government to "'the literal terms'" of the agreement and to the "'most meticulous standards of both promise and performance.'" *Id.* at 374 (quoting *United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1988)). When reviewing whether the government breached a proffer agreement, we review disputed facts for clear error and the ultimate question of breach *de novo*. *Farmer*, 543 F.3d at 373.

In this case, the government did not breach its proffer agreement with Schuster. We know this for two reasons. First, although Schuster did sit for a lengthy proffer interview with agents from the Netherlands (with a Homeland Security agent in attendance), Schuster does not cite to record evidence that Schuster ever said, during the proffer, that he distributed the "Hello Alex" series. At most, Schuster cites to his sentencing memorandum in the district court, but that memo did not say that Schuster made a proffer-protected statement that he distributed the series. *See* Appellant Br. at 10-11 (citing R. 29 at 21-22). So to the extent that Schuster is arguing that the letter to the District Judge merely repeated what had been said during a proffer session, the record does not support the premise of the argument.[2]

---

[2] Schuster also appears to argue that an earlier letter, sent to the prosecutor on August 8, 2011, contained the admission of distribution and that the August 8 letter was proffer protected. Schuster's counsel laudably sent the letter to correct a statement that Schuster made during the guilty-plea colloquy of August 5, in which he said that he did not distribute the

(continued...)

The second reason Schuster's argument fails is more fundamental than the first: in the letter to the District Judge, it was Schuster, not the government, who sought to make affirmative use of the information that he distributed the "Hello Alex" series. In the letter, Schuster did not merely refer to information that he provided during a proffer interview with the government (even assuming he provided information about the distribution, which the record does not support). Instead, Schuster admitted that he had distributed the series in order to explain purported mitigation for his conduct, specifically, how awful he felt after sending it. He thus was not using the proffer agreement to shield himself from the use of proffer-protected information against him; he instead directly introduced the concession to the District Judge in order to affirmatively present his own mitigation argument. Faced with these circumstances, the district court correctly concluded that Schuster "admitted it [the distribution] outside the proffer." Sentencing Tr. at 17.[3]

---

[2] (...continued)
"Hello Alex" series. But that letter was sent before the entry of the proffer agreement, which is dated August 22, and the August 8 letter itself makes no mention of proffer protection. We thus reject Schuster's reliance on this earlier letter as the basis for the proffer-protection argument.

[3] To the extent that Schuster also premises his argument on Federal Rule of Evidence 410(a), for the same reasons we reject the proffer-protection argument, we conclude that the
(continued...)

We note too our agreement with the district court that
the content of the photos themselves showed that
Schuster prepared the photos for distribution. Sentencing
Tr. at 18. Schuster wrote messages to the intended
recipient on note cards, and then placed those cards on
the victim's body in order to convey the messages via the
photos themselves. The district court could reasonably
infer that Schuster carried out his plain intent and
actually sent the messages to "Alex."[4] The finding of
distribution is affirmed.

## B. Distribution as Relevant Conduct

Schuster's next argument is that, *if* we were to over-
turn the finding of distribution on the "Hello Alex"
series, then Schuster's other distributions of other child
pornography did not qualify as "relevant conduct," for
Sentencing Guidelines purposes, to the offense of con-
viction (the distribution of the "Hello Alex" series).
USSG § 1B1.3(a)(1)(A). As we have explained, however,

---

[3]  (...continued)
letter to the District Judge was not "a statement made
during plea discussions with" the prosecutor. Fed. R. Evid.
410(a)(4).

[4]  What's more, the government also presented evidence that
Schuster had distributed other child pornography to
Mikelsons, Presentence Report ¶¶ 12, 13, so Schuster had
not confined his conduct only to manufacturing and down-
loading.

we affirm the finding of distribution on the "Hello Alex" series, so there is no need to address this issue.

## C. Finding of Child Pornography

Schuster's third argument is that the district court erred in finding that the "bathtub" series of photos included an image of child pornography. This finding had an impact on sentencing because the parties treated the "bathtub" series as the equivalent of a potential separate count of conviction, as dictated by Sentencing Guideline § 2G2.1(d)(1) and application note 5 to that guideline.[5] This in turn tagged Schuster with, in Sentencing Guidelines parlance, an extra "Unit," resulting in an one-level increase in the offense level. USSG § 3D1.4.[6]

---

[5] The defendant did not contest that the "bathtub series" was relevant conduct to the offense of conviction. *See* USSG § 2G2.1(d)(1) (treat separate minor as a separate count of conviction if "offense involved" more than one minor); *see id.* appl. n.5 ("if the relevant conduct of an offense of conviction includes more than one minor being exploited, whether specifically cited in the count of conviction or not, each such minor shall be treated as if contained in a separate count of conviction").

[6] As it turns out, without the one extra level, Schuster's total adjusted offense level would be 44, which would ordinarily still call for a life sentence under the advisory Guidelines (he was in criminal history category I). The statutory maximum was 30 years' imprisonment, so that became the Guidelines

(continued...)

According to Schuster, the "bathtub" series did not show "sexually explicit conduct," which is defined in 18 U.S.C. § 2256(2). The government argued, and the district court agreed, that one of the images did show a "lascivious exhibition of the genitals." 18 U.S.C. § 2256(2)(A)(v). Whether an image depicts a "lascivious exhibition of the genitals" is an intensely fact-bound question. *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011) (jury was instructed to consider a variety of factors, and the district court "properly admonished the jury that it was not confined to these factors . . ., that the government was not required to prove that each of these factors was present, and that it was for the jury to decide the importance of any one factor.") Indeed, "the question is left to the factfinder to resolve, on the facts of each case, applying common sense," *id.*, so we will review only for clear error, despite Schuster's argument for *de novo* review.

Remember that this series shows three young boys in a bathtub. In the image at issue, a two-year-old boy is squatting in the tub, and the image shows him from the chest-down to his knees. The photo is taken from a perspective that is above the boy, on a downward angle, and shows the boy's genitalia. It is true that not every nude photograph is a "lascivious" one. *E.g.*, *United*

---

6 (...continued)

range, USSG § 5G1.1(a), and would be the range with or without the extra level, but the government does not argue that the one-level increase was harmless.

*States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008). A lascivious exhibition "is one that draws attention to the genitals or pubic area of the subject 'in order to excite lustfulness or sexual stimulation in the viewer.'" *United States v. Russell*, 662 F.3d 831, 834 (7th Cir. 2011) (quoting *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994)). Put another way, "the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *Greisbach*, 540 F.3d at 656; *Russell*, 662 F.3d at 843. In the parties' dispute over whether the bathtub photo depicts a lascivious exhibition, both Schuster and the government are content to rely on the now well-known but still-debated factors set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986):

> (1) whether the focal point of the picture is the minor's (or another person's) genitalia;
>
> (2) whether the setting or pose is customarily associated with sexual activity;
>
> (3) whether the minor's pose is unnatural given his or her age;
>
> (4) whether the minor is fully or partially nude;
>
> (5) whether sexual coyness or willingness to engage in sexual activity is suggested; and
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

We have neither endorsed nor rejected the *Dost* factors, *Russell*, 662 F.3d at 843, and in light of the parties' acceptance of the factors for this appeal, once

again we need not decide one way or the other. What is important to this appeal, however, is that "the intent and motive of the photographer can be a relevant consideration in evaluating" images. *Id.* at 843-44 (citing *United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990), and *United States v. Burt*, 495 F.3d 733, 741 (7th Cir. 2007)). As we noted in *Russell*, "although it is the sexually suggestive nature of a photograph of a minor which distinguishes a depiction of simple nudity from a lascivious exhibition of the genitals, children typically are not mature enough to project sexuality consciously; instead, as the Ninth Circuit [in *Arvin*] has pointed out, it is often the photographer who stages the picture in such a way as to make it sexually suggestive." 662 F.3d at 843-44 (citation omitted). Thus, in some circumstances, the intent and motive of the photographer, by putting the images in context, place an important gloss on whether the relevant factors point to lasciviousness. *Id.* at 844.

Here, the district concluded that Schuster's intent was to focus on the genitals, thereby creating a sexually suggestive photo. In reaction to the government's description of the photo as a "close-up photo of a little boy's privates," the district court agreed, stating that "[i]t looks to me as if that was the whole intention of the picture." Sentencing Tr. at 21. The district court went on to find that "[i]t's definitely a picture focusing on the genitalia," specifically remarking that "*[i]t's not the whole body.*" Sentencing Tr. at 22 (emphasis added). Schuster does not dispute that the boy's genitalia are shown but his head is not, which undermines his argument that the

photo is of the same ilk as common photos showing kids playing in a bathtub. This photo did not capture the joy on the face of a child playing in the tub.

As noted, Schuster does argue that the setting—kids playing in the bathtub—points against a finding of lasciviousness. It may be true, as the government concedes, that "[s]tanding alone, the setting [the bathtub] is not commonly associated with sexual activity. But showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film." *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010). So even this factor does not necessarily weigh in Schuster's favor.

The district court's sensible reliance on the photo's failure to show the boy's whole body, and the resulting focus on the genitals, would be enough to survive clear error review, but there is more. Above all, Schuster's intent and motive in photographing the boy in that specific way also support the district court's finding. The evidence was plentiful that Schuster collected child pornography (he called it an "addiction to child pornography") and had a sexual interest in young boys. That sexual interest sheds light on why Schuster took the photograph of a nude boy's genitals, and whether the image is sexually suggestive rather than, as Schuster argues, some sort of innocent mistake. In addition to this sexual interest in young boys *generally*, the government also presented evidence that Schuster had a sexual interest in this boy *specifically*. According to the boy, Schuster pulled down the boy's pants and asked to touch the boy's "privates." PSR ¶ 30. The boy told

Schuster "no," but Schuster "did it anyway." *Id.* The victim went to the bathroom, told Schuster he did not need help, but Schuster rubbed the boy's penis with toilet paper when the boy was done using the bathroom. *Id.* Schuster argues that he was simply trying to help the boy clean up after going to the bathroom, but the boy's description of the contact proves otherwise. Schuster's intent and motive support the district court's finding, and we conclude that the district court did not clearly err in finding that the photo depicted the lascivious exhibition of genitals.

### D.  Reasonableness of the Sentence

Lastly, Schuster challenges the reasonableness of the sentence. He first launches a broadside attack on the Sentencing Guideline that governs offenses involving the manufacturing of child pornography, USSG § 2G2.1. According to Schuster, the guideline ought not be given the same type of consideration that district courts give to other guidelines because § 2G2.1 does not reflect the Sentencing Commission's expertise and empirical data-gathering efforts, but instead reflects congressional commands in the form of direct legislative amendments to the Guidelines. Schuster's argument does not account for the possibility that Congress itself may have studied the problem of child pornography. At any rate, even if a district court chose, as it may, to disagree with the policy choices that underlie a particular Guideline, it does not follow that other district courts *must* give less regard to that Guideline. *United States v. Maulding*, 627

F.3d 285, 287-88 (7th Cir. 2010) (per curiam) (rejecting similar challenge to the receipt, possession, and distribution guideline); *see also United States v. Huffstatler*, 571 F.3d 620, 622-23 (7th Cir. 2009) (per curiam).

Schuster presents a more case-specific argument, contending that the district court did not adequately consider the controlling sentencing factors in 18 U.S.C. § 3553(a). It is not entirely clear whether Schuster intends to challenge the sentence as procedurally unreasonable, as substantively unreasonable, or both. We review a claim of procedural error *de novo*, and a challenge to the sentence's substantive reasonableness for an abuse of discretion. *United States v. Mantanes*, 632 F.3d 372, 374 (7th Cir. 2011). In light of the district court's careful consideration of the § 3553(a) factors, neither claim has merit.

The district court gave more than meaningful consideration of the § 3553(a) factors, and thus committed no procedural error. During its extended explanation of the sentence, the district court explained the advisory Sentencing Guidelines calculation, which pegged the total adjusted offense level at 45. The district court recognized that, because of the statutory maximum of thirty years of imprisonment, the Guidelines range was instead set by that maximum. Sentencing Tr. 43-45. The district court aired its concern with the Sentencing Guideline for possession of child pornography, USSG § 2G2.2, but noted that the court was less concerned with the severity of the Guideline that applied to Schuster, who made child pornography. Beyond the

Guidelines calculation, the district court detailed the aggravating circumstances of the "horrific offense," and yet discussed at length the "very good side" of Schuster. Sentencing Tr. at 41. In explaining the "good side" of Schuster, the district court considered the strong family, friend, and community support that remained firmly in Schuster's camp, even though the supporters knew what Schuster stood convicted of. Sentencing Tr. at 41 ("It is quite amazing . . . that there are so many people in this courtroom who are here to support you.") The district court noted Schuster's difficult childhood, his perseverence through financial struggles, and his ability to provide for his own family through steady employment. Sentencing Tr. at 45-46. Also in Schuster's favor, the district court acknowledged that Schuster had accepted responsibility, and the court recognized Schuster's cooperation with the Dutch law-enforcement officials who were investigating Mikelsons. Sentencing Tr. at 42. The government had put a value on that cooperation, seeking a sentence somewhere in the Guidelines-range equivalent of offense level 39, which is 262 to 327 months' imprisonment. Sentencing Tr. at 25. Ultimately, after explaining all these factors (and more), the district court chose a sentence of 262 months' imprisonment. The detailed discussion refutes any contention of procedural error.

Nor was the sentence substantively unreasonable. Based on the factors relied on by the district court, the sentencing judge acted well within its discretion in choosing the nearly 22-year imprisonment term. We presume the reasonableness of a within-Guideline sen-

tence, including Guidelines ranges generated by the sexual exploitation guidelines. *Mantanes*, 632 F.3d at 377. Here, the sentence was around eight years under the advisory Guidelines of thirty years (as set by the statutory maximum). Plus, as the district court explained, there were significant aggravating circumstances: a horrific offense, committed thrice over with three different young victims, two of whom were related to Schuster. We cannot say that Schuster has overcome the presumption of reasonableness.

### III.

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.