In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3747

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY PUST,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cr-00859-2 — **Sharon Johnson Coleman**, *Judge*.

ARGUED OCTOBER 27, 2014 — DECIDED AUGUST 18, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and
WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Larry Pust was convicted after a
jury trial of four counts of wire fraud. He and his co-
conspirator Robert Anderson ran a $10 million Ponzi scheme
for over two years getting clients to invest in a phony low-
income housing investment program in the Chicagoland ar-

ea. He was sentenced to 34 months' imprisonment to run concurrently on each count. He now appeals his conviction, arguing that the evidence was insufficient to establish that he acted with intent to defraud the alleged victims. He also challenges the district court's decision to admit statements of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E). For the reasons stated herein, we affirm Pust's conviction.

## I. BACKGROUND

Larry Pust met a man named Robert Anderson sometime before 2005. Robert Anderson was the owner and officer of several corporations and ran different investment programs. Pust lived in Spokane, Washington, and had no professional experience as an investment broker. Nevertheless, Pust invested $10,000 in one of Anderson's programs and began helping Anderson find investors for various other programs. One such program was called Rosand Enterprises, Inc. ("REI"), a supposed low-income housing program based in Chicago. Pust and Anderson solicited funds from investors for REI and guaranteed that the funds went into an attorney's escrow account, which was "absolutely secure." They told investors that the funds were only used as leverage to secure lines of credit in order to construct and sell low-income housing. The "guaranteed returns" were promised to be as high as 20% each month. In actuality, no such program existed. REI never purchased lots in Chicago and did not participate in any government-sponsored low-income housing programs. Instead, Anderson and Pust ran a Ponzi scheme where new investor funds were used to make interest payments to old investors and to make purchases in se-

curities trading programs which the defendants referred to as Dr. Fred, Methwold, Lady Jane, and Howard Norris.

In December 2011, Anderson and Pust were indicted for wire fraud in violation of 18 U.S.C. §1343. Anderson pled guilty, but Pust proceeded to trial. Before trial, the government made a *Santiago* proffer to admit as evidence against Pust statements of Anderson under FRE 801(d)(2)(E). *See United States v. Santiago*, 582 F.2d 1128, 1130–31 (7th Cir. 1978). Defense counsel did not object pre-trial or during trial as the statements were admitted. When the district court asked defense counsel if he had any objections as the statements were admitted, defense counsel responded "no" and "no objection."

At trial, several of REI's victim-investors testified regarding conversations they had with Pust and Anderson. Other evidence admitted at trial included numerous emails between Pust and Anderson, Pust and the victim-investors, and Anderson and the victim-investors. At the conclusion of trial in March 2013, a jury found Pust guilty of four counts of wire fraud. This appeal followed.

## II. ANALYSIS

On appeal, Pust challenges the sufficiency of the evidence underlying his conviction for wire fraud. He also challenges the district court's decision to admit statements of Anderson under FRE 801(d)(2)(E). We address each argument in turn.

### A. Sufficient Evidence to Support Wire Fraud Conviction

When evaluating the sufficiency of the evidence, we consider the evidence in the light most favorable to the prosecu-

tion, making all reasonable inferences in its favor. *United States v. Paneras*, 222 F.3d 406, 410 (7th Cir. 2000). We will affirm the conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime. *Id.*

In order to convict Pust for wire fraud under 18 U.S.C. §1343, the government needed to prove that (1) there was a scheme to defraud; (2) wires were used in furtherance of the scheme; and (3) Pust participated in the scheme with the intent to defraud. *United States v. Sheneman*, 682 F.3d 623, 628 (7th Cir. 2012); *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005). Here, Pust only challenges the sufficiency of the evidence with respect to the intent to defraud element. "An 'intent to defraud' means that the defendant acted willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for himself or causing financial loss to another." *Paneras*, 222 F.3d at 410 (internal quotations and citations omitted). "However, because direct evidence of a defendant's fraudulent intent is typically not available, specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* (citing *United States v. LeDonne*, 21 F.3d 1418, 1426 (7th Cir. 1994)).

Pust argues that to reasonably infer an intent to defraud requires more than involvement in a scheme or repeating the scheme's misrepresentations or even persisting in selling the scheme despite some awareness of areas of concern. He does not challenge the fact that Anderson was running a Ponzi scheme, but he claims that he did not know the fraudulent

nature of the scheme and merely repeated misrepresenta-
tions that Anderson made to him. Pust acknowledges that he
told victim-investors that their money would be invested in-
to a low-income housing program, that no low-income hous-
ing investment program actually existed, that new investor
funds were used to pay old investors, and that other investor
funds were used to pay for unrelated securities trading. But
Pust says that there is no evidence that he did not believe the
misrepresentations were true.

We disagree. The government presented ample evidence
from which a rational jury could find that Pust knew what
he was telling investors was false and that he acted with an
intent to defraud. Particularly, the emails exchanged be-
tween Pust and Anderson and between Pust and victim-
investors were evidence from which a reasonable jury could
infer that Pust knew no low-income housing project existed
and that REI investor funds were being taken out of the sup-
posedly secure escrow account and used for other trading
projects.

FBI Special Agent Joseph Karmik testified that he re-
viewed approximately 7,500 email messages involving Pust's
email addresses in the course of his investigation. None of
the messages the government examined between Pust and
Anderson discussed topics related to building low-income
housing like closing dates, purchase agreements, or con-
struction. Pust was in Spokane during the relevant events,
but he and Anderson communicated frequently through
email. If the two were truly involved in a program that built
low-income housing, over the course of 7,500 emails, one
would expect to see at least one email discussing the logistics

of housing construction. So the jury was entitled to infer that Pust knew the low-income housing project was a lie.

Moreover, the government introduced many of these 7,500 emails at trial. For example, emails back and forth between Pust and Anderson show that Pust knew the funds did not remain in the escrow account, even though Pust admits that he told investors that is where the funds would stay. In emails dated February 21, 2007 and March 30, 2007, Anderson discussed needing to repay the escrow account. In the March 30 email, Anderson told Pust that he would use the Methwold monies to "cover our March debts to the investors" and "[s]hould Fred get us caught up as he stated, then I could catch up on the escrow." Then, on January 9, 2008, Pust emailed victim-investor Brian Ford and told him that the price of inner city lots had increased, which is why the monthly interest had decreased to 10%. This email is one of many in which Pust lied to investors about the existence of the housing project. Additionally, on April 30, 2008, Anderson and Pust exchanged emails regarding $175,000 they received from a new investor. They discussed which investors should now receive payments as a result of the influx in funds. The investors identified by Pust as needing payment were both investors in the supposed low-income housing project.

We find Pust's argument that he was an unwitting participant in Anderson's scheme unpersuasive. There was sufficient evidence from which a reasonable jury could infer that Pust knew the material facts that he represented to investors were false and that he acted with intent to deceive.

**B. Co-Conspirator's Statements Properly Admitted**

Pust also argues that the district court erred in admitting statements of Anderson under FRE 801(d)(2)(E). For a co-conspirator's statements to be admissible under FRE 801(d)(2)(E), the government must establish by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statements were made in furtherance of the conspiracy. *United States v. Villasenor*, 664 F.3d 673, 681–82 (7th Cir. 2011). Normally, we review the district court's decision to admit a co-conspirator's statements under FRE 801(d)(2)(E) for an abuse of discretion. *Id.* at 681. Under this standard, findings of fact are reviewed for clear error. *United States v. Rea*, 621 F.3d 595, 604 (7th Cir. 2010). However, Pust's attorney did not object to the admission of Anderson's statements at trial. Furthermore, when asked if he had any objections to the statements, at times, the attorney said "no objection" or "no." Therefore, the government argues that Pust has waived his right to challenge the admission of these statements.

"When a defendant intentionally relinquishes or abandons a known right, the issue has been waived and cannot be reviewed on appeal, not even for plain error." *United States v. Locke*, 759 F.3d 760, 763 (7th Cir. 2014). A defendant who affirmatively states "I do not object" has intentionally waived the right and cannot ask for review. *Id.* Forfeiture, on the other hand, comes about through neglect. *United States v. Spells*, 537 F.3d 743, 747 (7th Cir. 2008). Forfeited issues are reviewed for plain error. *Id.* To reverse for plain error, this court must find (1) error, (2) that is plain, (3) that affects the defendant's substantial rights; and (4) that seriously affected

fairness, integrity, or public reputation of judicial proceedings. *United States v. Ambrose*, 668 F.3d 943, 963 (7th Cir. 2012).

In his reply brief, Pust argues that he may have forfeited his challenge to the admissibility of Anderson's statements, but he has not waived the issue because there was no intentional relinquishment. We agree with the government that Pust has come very close to waiving his right to challenge this issue because he was asked if he had any objections and his attorney replied "no objection" or "no." *See United States v. Natale*, 719 F.3d 719, 730 (7th Cir. 2013). But in *Natale*, we recognized the harshness of the waiver rule where defense counsel's statements likely resulted from negligently bypassing a valid argument rather than a knowing and intentional decision. *See id.* at 730–31. In circumstances where defense counsel's approval of some action is "nothing more than a simple 'no' or 'no objection' during a rote call-and-response colloquy with the district judge," we suggested we could more closely examine whether the defendant truly waived his challenge or merely forfeited it. *Id.*

However even if we were to find Pust's challenge only forfeited and subject to plain error review, Pust has not demonstrated plain error. "To establish the existence of a conspiracy, the offering party must show that there was an agreement to commit some illegal act and the alleged conspirator knew 'something of its general scope and objective.'" *United States v. Mahkimetas*, 991 F.2d 379, 382 (7th Cir. 1993) (citations omitted). To prove a defendant's involvement in a conspiracy, the government must show that (1) the defendant knew of the conspiracy, and (2) the defendant intended to associate himself with the criminal scheme. *United*

*States v. Schumpert*, 958 F.2d 770, 773 (7th Cir. 1992). Circum-stantial evidence may be used to establish the existence of a conspiracy and a defendant's involvement in the conspiracy. *Id.* In fact, circumstantial evidence is often the only proof available when no members of the conspiracy testify against their co-conspirators. *See id.*

Pust argues that the government failed to show that a conspiracy existed between Anderson and himself because there was no evidence that Pust knew the general scope and objective of the conspiracy or that he had an intent to associ-ate with the purported conspiracy. But we disagree. The same evidence used to establish that Pust acted with an in-tent to defraud—namely, the email correspondences—is cir-cumstantial evidence from which the district court properly inferred the existence of a conspiracy and Pust's involvement in that conspiracy. For example, emails show Pust and An-derson discussing where to move investor funds and what lies to tell investors about the mortgage industry when they inquired about the decline in monthly interest payments from the REI project. The emails provide compelling evi-dence of Pust's knowledge of and involvement in the scheme. We agree with the government that Pust's challenge to the admission of Anderson's statements is simply a rehash of his challenge to the sufficiency of the evidence, and for the same reasons we found the evidence sufficient to support the verdict, we reject his evidentiary challenge. *See United States v. Yoon*, 128 F.3d 515, 526 (7th Cir. 1997) (rejecting chal-lenge to admission of co-conspirator statements under FRE 801(d)(2)(E) where essentially identical to sufficiency chal-lenge). There was no error in admitting Anderson's state-ments.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.