In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2643

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALI AL-AWADI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana.
No. 15 CR 0072 — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 17, 2017 — DECIDED OCTOBER 13, 2017

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* While he was the only adult in a room of napping children at the daycare where he worked, Ali Al-Awadi pulled back the underwear of one young girl and took pictures. He claimed at trial that he did so because she injured herself on his watch while she was playing on his lap and he was checking for injury. The jury did not believe him and convicted him of making and attempting to make child pornography. He appeals his convictions. Several of his

arguments concern evidence the jury heard that Al-Awadi also digitally penetrated the young girl, an act for which he was not charged in this case. Although he argues the jury received the wrong standard when it was instructed to determine whether it was "more likely than not" that Al-Awadi had molested the girl, the pattern jury instruction given to the jury accurately told the jury how to assess evidence of acts other than charged crimes. The jury was also instructed that the government had to prove the elements of the charged crimes beyond a reasonable doubt for Al-Awadi to be found guilty. Al-Awadi also argues that the jury heard too much evidence of the molestation. However, the evidence was permissible because he placed his intent in taking the pictures at issue, the molestation evidence was relevant to his intent, and the government's evidence was not unduly repetitive. Finally, sufficient evidence supports the jury's conclusion that Al-Awadi used the young girl to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct.

## I. BACKGROUND

Soon after he began working at a daycare, other teachers expressed concern about twenty-year-old Ali Al-Awadi's interactions with young female children there. Al-Awadi was cautioned about sitting children on his lap in the classroom, picking up children who could walk, and taking female children into the bathroom.

Al-Awadi took a particular interest in one young girl in the kindergarten room, four-year-old Child Victim One ("CV1"). On August 21, 2014, the daycare was shorthanded of staff, and Al-Awadi took advantage. Al-Awadi was sent to cover the kindergarten room during the substitute teacher's

lunch. While he was the only adult in the room and it was darkened for the children to nap, he sat down next to CV1. When she fell asleep, Al-Awadi opened her pants and pulled her underwear away from her. He then took two pictures of her vagina. He thought the quality of the pictures was poor so he took two more. Al-Awadi then placed his finger in CV1's vagina. This woke up the young girl.

When the teacher returned to the classroom, Al-Awadi went to his car for about thirty minutes. At some point, he deleted the pictures from his cellphone.

While Al-Awadi was still out of the room, CV1 told the teacher, "It hurts down there," while pointing to her vagina. When the teacher asked why, CV1 responded, "It hurts down there because Mr. Ali touched it." The teacher reported this to the school secretary, who for some reason asked Al-Awadi to return to the kindergarten room. The teacher asked CV1 to repeat what she had said, which she did. Al-Awadi then picked CV1 up, sat her on his lap, and said, "no, thank you." CV1 left his lap.

The secretary also informed the daycare's assistant director, who then spoke with Al-Awadi. He claimed that he and CV1 had been playing, that she jumped on his lap and wrapped her legs around his arm, and that when he pushed her off, she pinched her vagina on his watch.

After daycare, CV1 told her mother she had pain in her vagina and later informed her of what Al-Awadi had done. At the hospital, the nurse who examined CV1 noted swelling and several areas of redness that were consistent with digital penetration. A pediatrician who later examined CV1 said it was unlikely that her injury was caused by a watch.

Law enforcement recovered the deleted images from Al-Awadi's phone, and a DNA test concluded that Al-Awadi's DNA was consistent with that found on CV1's underwear. Law enforcement also discovered that Al-Awadi had viewed child pornography in the past.

A second superseding indictment charged Al-Awadi with four counts of sexual exploitation of a minor through the production of child pornography, in violation of 18 U.S.C. § 2251(a), and four counts of attempted production of child pornography, in violation of 18 U.S.C. § 2251(e). Before trial, the government filed notice of its intent to use evidence of Al-Awadi's molestation of CV1, and the district court admitted this evidence under Federal Rules of Evidence 404(b) and 414(a).

Multiple witnesses testified for the government at trial, including CV1 who was then six years old. Al-Awadi testified in his own defense. A jury convicted Al-Awadi on three counts of sexual exploitation by producing child pornography and on all four of the attempt counts. The district court vacated three of the attempt convictions because they were lesser included offenses of the completed offenses. The judge sentenced Al-Awadi to concurrent terms of 324 months' imprisonment and fifteen years of supervised release on each count. Al-Awadi appeals.

## II. ANALYSIS

### A.  No Error in Jury Instructions

Al-Awadi first argues that the jury should not have received the instruction that reads as follows, with our underline added to the words with which Al-Awadi especially takes issue:

> You have heard testimony and evidence that the Defendant committed crimes, acts and/or wrongs other than the ones charged in the Indictment. Before using this evidence, you must decide whether it is <u>more likely than not</u> that the Defendant did the crimes, acts, and/or wrongs that are not charged in the Indictment. If you decide that he did, then you may consider this evidence to help you decide the Defendant's intent to produce or attempt to produce child pornography, absence of mistake in dealing with the alleged victim or opportunity. You may not consider it for any other purpose. Keep in mind that the Defendant is on trial here for sexual exploitation and attempted sexual exploitation of a child, not for the other crimes, acts, or wrongs.

This instruction is our Seventh Circuit Pattern Criminal Jury Instruction 3.11, "Evidence of Other Acts by Defendant," with Al-Awadi's case-specific information added. Al-Awadi maintains that the "more likely than not" language in the instruction improperly directed the jury to apply the preponderance of the evidence standard to intent, which is an element of the charged offenses. Especially because the evidence of molestation had been admitted as direct evidence of the charged crimes, Al-Awadi maintains that the result of the instruction was that the jury could find the intent element of the charged crimes satisfied by a preponderance standard rather than by the constitutionally required standard of beyond a reasonable doubt.

Al-Awadi did not object at trial to this instruction. The government first contends that Al-Awadi waived any right to

our review of the instruction. "The touchstone of waiver is a knowing and intentional decision." *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). The trial transcript reflects a discussion between the district court and counsel outside the presence of the jury before closing arguments in which the judge stated, "earlier this morning we talked about the final instructions," and then asked the government and Al-Awadi's counsel whether each "had any objections to any of the final instructions." Al-Awadi's counsel responded, "No objection to the final instructions, Your Honor."

In arguing that counsel's response constitutes waiver of any review of the instruction at issue, the government points to cases including our decision in *United States v. Natale*, 719 F.3d 719 (7th Cir. 2013). But even *Natale* recognized the harshness of a waiver result in cases where defense counsel simply says "no objection" during a rote colloquy with a judge, and we further noted there that we may review even waived arguments when "the interests of justice" require it. *Id.* at 730–31. More recent cases follow in the same vein. *See United States v. Ajayi*, 808 F.3 1113, 1121–22 (7th Cir. 2015) (reviewing challenged jury instruction for plain error even though counsel stated "no objection" during rote colloquy where government stated instruction was a pattern instruction but did not disclose that language was missing); *United States v. Pust*, 798 F.3d 597, 602 (7th Cir. 2015) (reviewing admission of challenged statements for plain error where counsel at times said "no objection" or "no" when asked if objection to admission). Waiver is, after all, an intentional relinquishment of a known right, while merely "negligently bypassing" an argument allows for our review on appeal, albeit under the demanding standard of plain error review. *Pust*, 798 F.3d at 602. Here, the contents of the discussion earlier in the morning regarding the

jury instructions are not in the transcript; had they been and depending on their content we might have more comfort in a finding that Al-Awadi intentionally relinquished his review of Instruction No. 12.

In any event, at the least, it is clear that Al-Awadi forfeited his contest to the instruction by failing to object before the district court, and our review of forfeited arguments is for plain error. *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). That means we will grant relief only if there was an error; the error was plain, meaning clear or obvious; the error affected the defendant's substantial rights in that he probably would not have been convicted absent the error; and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Because it is a pattern instruction, the instruction at issue is presumed to accurately state the law. *United States v. Marr*, 760 F.3d 733, 744 (7th Cir. 2014). While the government certainly had the burden of proving beyond a reasonable doubt that Al-Awadi committed the charged crimes, on its face Instruction No. 12 is directed at acts "other than the ones charged in the Indictment" and repeats again at the end of the instruction that the "Defendant is on trial here for sexual exploitation and attempted sexual exploitation of a child, not for the other crimes, acts, or wrongs." The sentence with which Al-Awadi takes issue only speaks of the preponderance of the evidence standard for uncharged conduct, as it states:" … you must decide whether it is more likely than not that the Defendant did the crimes, acts, and/or wrongs that are not charged in the Indictment." So the instruction makes clear that it is not about the charged crimes or elements of the offense, and it only directs the "more likely than not" standard

to apply to the jury's determination of whether Al-Awadi molested CV1. *See United States v. Gomez*, 763 F.3d 845, 854 (7th Cir. 2014) (en banc).

For the elements of the charged crimes including intent, on the other hand, the jury was instructed that the standard it must apply was that of beyond a reasonable doubt. That is important because we review challenges to jury instructions like Al-Awadi's challenge to Instruction No. 12 by examining the jury instructions as a whole and in the context of the entire proceeding. *See United States v. Fiedeke*, 384 F.3d 407, 411 (7th Cir. 2004). When it came to the charged crimes, the instructions were clear that the government's burden of proof was that of beyond a reasonable doubt. The elements instruction stated that to find the defendant guilty of sexual exploitation of a minor, "the Government must prove each of the following elements beyond a reasonable doubt" and then listed the elements. The instruction directed that if the jury found the government had proved the "elements beyond a reasonable doubt," it should find the defendant guilty, but if it found "the Government has failed to prove any of these elements beyond a reasonable doubt," it should return a not guilty verdict. The next instruction gave identical directions for the crime of attempted sexual exploitation of a minor.

Non-elements instructions also reminded the jury of the constitutionally required burden of proof. Instruction No. 3 stated that the defendant is presumed innocent of each of the charges, and that this presumption is not overcome unless the jury is "convinced beyond a reasonable doubt that the Defendant is guilty as charged." This same instruction further stated that the "Government has the burden of proving the

Defendant's guilt beyond a reasonable doubt." The penultimate instruction included the direction, "Your sole interest is to determine whether the Government has proved its case beyond a reasonable doubt." The instructions also told the jury the government had to prove beyond a reasonable doubt that the defendant is the person who committed the charged crime. The instructions correctly informed the jury of the standard of proof for the elements, which was a higher standard than for non-charged crimes, acts, or wrongs. We find no error, plain or otherwise, in the jury's receipt of Instruction No. 12.[1]

### B. Admission of Evidence of Molestation

Al-Awadi makes several arguments on appeal regarding the admission of the evidence of the alleged digital molestation of CV1. At trial, Al-Awadi objected to the cumulative effect of testimony from multiple witnesses about the molestation. He repeats that argument now, so we review the district court's decision to allow all the evidence of the molestation that it did for an abuse of discretion. *United States v. Fifer*, 863 F.3d 759, 767 (7th Cir. 2017). He also makes several new arguments on appeal that he did not raise before the district court, and for those our review is for plain error. *See United States v. Schrode,* 839 F.3d 545, 554 (7th Cir. 2016).

We address first whether evidence of CV1's alleged molestation was admissible at all at trial. The government

---

[1] The government also points out on appeal that under Rule 414 ("Similar Crimes in Child Molestation Cases"), evidence may be considered "on any matter to which it is relevant," which overrides the propensity bar in Rule 404, *United States v. Stokes*, 726 F.3d 880, 896 (7th Cir. 2013), so Instruction No. 12 may have been more favorable to Al-Awadi than the law required.

needed to prove as an element of the charged crime of making child pornography that Al-Awadi took the photographs with the requisite intent. *See* 18 U.S.C. § 2251(a). And in this trial, Al-Awadi's intent was the principal dispute. He did not contest that he had taken the photographs. Instead, his position throughout trial was that he had not taken the pictures with a sexually motivated intent. His counsel argued in opening statements that Al-Awadi had another valid reason to take the pictures, albeit a "stupid reason," and Al-Awadi took the stand and testified he was worried he had hurt CV1 so he took the pictures to check for injury. While saying it was the "dumbest thing" he had ever done, Al-Awadi maintained he had not taken the four photographs with sexual intent.

Al-Awadi therefore placed his intent at issue. The district court allowed evidence of the molestation at trial as direct evidence of the charged crimes, and the government introduced the evidence of molestation that was within seconds of when Al-Awadi took the photographs as evidence that Al-Awadi's intent in taking the pictures was a sexually motivated one. The molestation made Al-Awadi's criminal intent in taking the photographs more probable than it would have been without the evidence of molestation, so the molestation was relevant. *See* Fed. R. Evid.401, 402.

Repeating an argument he made before the district court, Al-Awadi argues that too much evidence of the molestation was admitted. He emphasizes that he was charged with making child pornography, not with the crime of child molestation. The jury heard evidence of the molestation from the substitute kindergarten teacher, who was the first person CV1 told; the daycare's assistant director, who interviewed both

CV1 and Al-Awadi; CV1's parents, who uncovered the molestation and took CV1 to the hospital; and from people who investigated the allegations—the nurse who examined CV1, the lead detective, the pediatrician who did a follow-up examination, and two forensic scientists who examined CV1's clothing for DNA and bodily fluids. We do not find an abuse of discretion in the district court's decision to admit the testimony from the multiple witnesses. The witnesses added different meaningful pieces to the account, and we do not see here an improper "drum beat repetition" of a victim's story, *cf. Stone v. State*, 536 N.E.2d 534, 541 (Ind. Ct. App. 1989), or the admission of "gruesome and unnecessary details," *United States v. Ostrowsky*, 501 F.2d 318, 323 (7th Cir. 1974), as in the cases to which Al-Awadi points, especially in light of Al-Awadi's defense at trial.

Al-Awadi also argues that the district court failed to conduct a proper Rule 403 analysis that balanced the evidence's probative value with its potential for unfair prejudice. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice … ."); *United States v. Loughry*, 660 F.3d 965, 972 (7th Cir. 2011) (finding district court erred by failing to explain how it balanced the Rule 403 considerations). We disagree. The district court first stated why it found the evidence admissible: it was direct evidence of guilt, and if not, it was admissible under Rule 414 subject to Rule 403's balancing test. It then explained why it concluded the molestation evidence was not unfairly prejudicial, stating that Al-Awadi had not objected to most of it, the details were probative to demonstrate CV1's credibility, and the evidence was not so graphic that its prejudicial impact outweighed its probative value.

Al-Awadi makes other arguments regarding admissibility issues, all of which we review for plain error because they are raised for the first time on appeal. He argues that the government failed to establish a temporal connection between CV1's reports of pain and the alleged molestation. For example, the substitute kindergarten teacher testified that on the day at issue, CV1 told her Al-Awadi had touched her "all the way down there and it really hurts. And Mommy said that I can't take a bubble bath no more because it's going to hurt worse." Because CV1's mother was not at the day care that day, Al-Awadi argues that the conversation about a bubble bath between CV1 and her mother must have taken place before Al-Awadi had any contact with CV1 on the day at issue.

There was no plain error in the district court's finding of sufficient evidence of a temporal connection between the alleged molestation and CV1's reports of pain to warrant admission of the molestation evidence. Among other evidence, CV1 said that she was not hurting before Al-Awadi inserted his finger in her, and the medical evidence supported an inference that her pain was from the molestation. Discrepancies in the conflicting testimony about timing go to the evidence's weight, not to its admissibility. *See United States v. Mokol*, 646 F.3d 479, 484 (7th Cir. 2011). Al-Awadi's attorney had the opportunity to, and did, cross examine witnesses regarding contradictions in the timing. We find no plain error.

Al-Awadi also argues that the videotaped statement CV1 gave to law enforcement should not have been admitted at the trial that took place two years after the events. CV1 testified at trial and appeared for cross examination, so the Confrontation Clause did not bar the introduction of her prior statement. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9

(2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). He also seems to suggest a due process violation in the admission of the videotaped statement, but his argument is difficult to discern. We find no plain error in the admission of the statement or of any other challenged evidence.

## C. Sufficiency of the Evidence

Al-Awadi also argues that it is not clear which body part is depicted in the pictures he took so the evidence at trial was insufficient to support his convictions. We will only set aside a guilty verdict on the basis of insufficient evidence "if the record contains no evidence from which a reasonable juror could have found the defendant guilty." *United States v. Longstreet*, 567 F.3d 911, 918 (7th Cir. 2009).

To sustain Al-Awadi's convictions under 18 U.S.C. § 2251(a), the statute requires that he must have used CV1 to engage in "sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct." The statute defines "sexually explicit conduct" to include the "lascivious exhibition of the genitals or pubic area," 18 U.S.C. § 2256(2)(A)(v), but it does not define "lascivious exhibition." We have said that a lascivious exhibition "is one that calls attention to the genitals or pubic area for the purpose of eliciting a sexual response in the viewer." *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011). More than mere nudity is necessary. *United States v. Miller*, 829 F.3d 519, 524 (7th Cir. 2016). Instead, "the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *Id.* at 524–25 (quotation omitted). Whether pictures reflect a lascivious exhibition is "an intensely fact-bound question," *United States v.*

*Schuster*, 706 F.3d 800, 806 (7th Cir. 2013), so "the question is left to the factfinder to resolve, on the facts of each case, applying common sense." *Russell*, 662 F.3d at 843.

Al-Awadi does not contest that the photographs he took were of CV1's pubic area. Instead, he argues that his convictions cannot stand because he contends that it is difficult to tell only from looking at the pictures the body part that is depicted.

Sufficient evidence supports the convictions here. Al-Awadi does not dispute that the pictures are in fact of CV1's nude genital area, and he acknowledged at trial that he pulled back CV1's clothing to focus on her genital area when taking the pictures. The jury also heard that he had previously shown an interest in CV1—the two called each other "Little Baby," for example—and that he had prior interest in child pornography. *See Schuster*, 706 F.3d at 807. The latter facts were relevant in assessing the images and in particular in determining whether the images were "for the purpose of eliciting a sexual response in the viewer" because Al-Awadi had "disclaimed any intent to create a sexually suggestive image." *Russell*, 662 F.3d at 843; *see also Schuster*, 706 F.3d at 806. There was sufficient evidence for the jury to conclude that Al-Awadi took the photographs of CV1's genital area for the purpose of eliciting a sexual response in him. *Cf. Russell*, 662 F.3d at 843 (explaining that subjective intent and motive of the creator of the photographer can be a relevant consideration); *Schuster*, 706 F.3d at 806.

That it may be difficult for some viewers to tell from the pictures alone which part of the body is depicted does not preclude conviction here. The pictures for which Al-Awadi was convicted of making child pornography clearly show

CV1's skin, and Al-Awadi does not dispute that the pictures are of CV1's genital area. *Cf. United States v. Levy*, 385 Fed. App'x 20, 23 n.4 (2d Cir. 2010) (unpublished) (declining to decide whether a blurry image can support a § 2251(a) conviction for making child pornography). The Fourth Circuit has even affirmed a § 2251(a) conviction when no visual depiction resulted because a videotape stopped before the victim undressed, reasoning that the crime was complete when the defendant induced the victim to engage in sexually explicit conduct "for the purpose of" making a visual depiction. *United States v. Buculei*, 262 F.3d 322, 327–28 (4th Cir. 2001). We need not consider that scenario, though, because pictures of CV1's genital area were in fact taken. The jury was justified in finding that Al-Awadi used CV1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.