In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2239

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN A. MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 13-CR-10098 — **James E. Shadid**, *Chief Judge.*

ARGUED FEBRUARY 25, 2016 — DECIDED JULY 14, 2016

Before BAUER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant Brian Miller filmed at least five minor girls undressing and showering using a hole he made in his basement-bathroom wall. After a bench trial, the district court convicted him of twenty-two counts of sexual exploitation of children. Miller appeals, arguing that there was insufficient evidence to find that the videos he created were "lascivious." He also challenges various aspects

of his sentence and conditions of supervised release. We affirm.

## I. BACKGROUND

Sometime before July 2011, Miller cut a hole through the drywall from a basement utility room into the basement bathroom. He scraped off part of the backing of the bathroom mirror and lined it up with the hole in the wall. He later installed a clear shower curtain.

From July 2011 through May 2012, Miller used his cell phone to take photos and videos of five different minor females, aged twelve to sixteen, undressing and/or showering in the basement bathroom. He specifically directed at least two of the minors to shower in the basement bathroom instead of the other bathroom in his home. Miller would go into the utility room and use his cell phone to film the girls in the bathroom as they became either fully or partially nude. One of the victims was half-sister to Miller's younger son.

In November 2011, Miller's older son discovered some nude videos on Miller's computer. His son confronted him, and Miller told him that the female was Miller's adult live-in girlfriend. Afterward, the computer disappeared, but Miller continued to film minor females in the bathroom.

In June 2012, Miller's son found the hole in the drywall and confronted Miller again. Miller's son left the home, at which point Miller contacted police to report his son as missing and out of control. After police located Miller's son, he told them about the videos and hole in the wall. On June 16, 2012, authorities executed a search warrant.

On September 25, 2013, Miller was indicted on three counts of attempted exploitation of children and twenty-two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a). He consented to a bench trial. Miller's defense was that the images were not a "lascivious exhibition of the genitals" within the meaning of 18 U.S.C. § 2256(2)(A) because they were "mere nudity." After presentation of the evidence, the government dismissed three counts of attempted exploitation of children.

The district court found Miller guilty of all remaining counts. It rejected Miller's argument that the videos were mere nudity and did not draw attention to the girls' genitals. In rejecting Miller's arguments, the district court relied on the fact that Miller "took a number of steps before he could even videotape," including cutting the hole in the wall, scraping off the mirror backing, lining up the holes, instructing the girls to shower in the basement, filming from the other side of the wall, and tracking the girls' movements. Those actions, the district court found, led to "only one reasonable inference from these facts, as to the purpose of Miller's actions and his mental state, and that is that he intended to view the minor teenage girls for his own sexual arousal." The district court also rejected Miller's argument that he had not zoomed in on the girls' pubic area, noting that "[t]here is no requirement under the statute to focus only on the pubic area, just that there is a focus on the pubic area."

At sentencing, Miller faced a mandatory minimum of 180 months and at least 5 years of supervised release. The district court determined that he had an offense level of 39 and a criminal history category of III, producing a guidelines range of 324 to 405 months. After discussing the relevant

sentencing factors, the district court sentenced Miller to a be-low-guidelines sentence of 216 months' imprisonment. It al-so imposed a 15-year term of supervised release, which in-cluded three special conditions to which Miller objected.

The first objectionable condition was that Miller "notify any individual or entity of any risk associated with his histo-ry." In response to Miller's argument that the condition was vague and overbroad, the district court modified it to re-quire: "The defendant shall allow probation to notify any individual(s) or entity of any risk associated with his history, which would be incident to areas or people or agencies fre-quented or attended by minors."

The second condition to which Miller objected was that he "shall submit to physiological testing" because the testing could lead to a violation of his right against self-incrimination. The district court overruled the objection, not-ing that Miller could invoke his right at the time an issue arose during testing.

Miller's third objection was to the condition that he not have "contact with any person under the age of 18" unless it is supervised, "in the course of normal commercial busi-ness," or "unintentional incidental contact." Miller argued that the condition was improper because it applied to his own children. The district court overruled the objection, not-ing that one of the victims is half-sister to one of Miller's sons.

## II. ANALYSIS

On appeal, Miller challenges his convictions, arguing that there was insufficient evidence to find that the videos were "lascivious." He also challenges the length of his sentence

and the imposition of three of the conditions of supervised release. We reject Miller's arguments.

*A. Sufficiency of the Evidence of Lasciviousness*

Miller's primary contention on appeal is that the evidence at his trial was insufficient to sustain his convictions for sexual exploitation of children.

"We review challenges to the sufficiency of the evidence at a bench trial under the same demanding standard applied to a jury trial." *United States v. Wasson*, 679 F.3d 938, 949 (7th Cir. 2012). That means "we will overturn the verdict only if we conclude, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.*

The government charged Miller with violations of 18 U.S.C. § 2251(a), which provides: "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, … with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct … shall be punished" by a term of imprisonment of at least 15, but not more than 30, years. 18 U.S.C. § 2251(a), (e). "Sexually explicit conduct" means a "lascivious exhibition of the genitals or pubic area of any person." § 2256(2)(A)(v).

The word "lascivious," however, is undefined in the statute, and we have offered limited instruction on its definition. Because lascivious means "tending to arouse sexual desire," Webster's Third New Int'l Dictionary, "more than nudity is required to make an image lascivious." *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008); *United States v.*

*Russell*, 662 F.3d 831, 843 (7th Cir. 2011). Instead, we require that "the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *Griesbach*, 540 F.3d at 656.

Aside from those principles,[1] the question of whether an image is lascivious "is left to the factfinder to resolve, on the facts of each case, applying common sense." *Russell*, 662 F.3d at 843. We need only decide whether the evidence was sufficient to support a finding that there was an "exhibition" of the pubic area that was "lascivious."

We look first to the videos themselves. In each of the videos forming the basis for a count of conviction, the minor's nude pubic area is visible, supporting the conclusion that there was an "exhibition" of the pubic area. *See United States v. Price*, 775 F.3d 828, 836–40 (7th Cir. 2014) ("Exhibition … is a showing or presenting to view." (internal quotation marks omitted)). Elements of the videos also support a finding of lasciviousness. The videos depict minors nude in the shower and sometimes undressing prior thereto. As we have described before, "showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in

---

[1] We acknowledge that there is a "test" for lasciviousness that comes from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). Neither the government nor Miller advocates our adoption of the *Dost* factors, and we have discouraged its mechanical application. *See United States v. Price*, 775 F.3d 828, 839–40 (7th Cir.2014) ("This case does not require us to determine whether the *Dost* factors are always or never permissible, but we do take this opportunity to discourage their routine use."). Resolution of this case does not require adoption of *Dost*, so we decline to do so.

film." *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (internal quotation marks omitted).

Miller argues that the videos do not support a finding that he "focused" on the genitals because the girls' entire bodies were in the videos, and he did not "zoom in" on the pubic area. There is no requirement in the statute that the creator zoom in on the pubic area. Nor is there a requirement that the pubic area be the sole focus of the depiction. Determining the focus of a depiction or whether it is "otherwise sexually suggestive" is properly left to the fact finder. *Griesbach*, 540 F.3d at 656.

Miller also seizes on the district court's statement that it "viewed the videos and to me … , these videos after viewing them are simply naked teenage minor girls." According to Miller then, the videos cannot be lascivious because they depict "mere nudity." Fact finders are not constrained, however, to the four corners of these videos to find that they were lascivious. Instead, the finder of fact may look to the creator's intent in making these videos, at which point it is clear that there was sufficient evidence to support a finding of lasciviousness. *See Russell*, 662 F.3d at 843.

Miller argues that relying on his intent is impermissible because "there is no intent prong in the statute."[2] (Appellant

---

[2] We assume that Miller is arguing that there is no intent prong in the meaning of the word "lascivious," not the entire statute. To the extent that he suggests there is no intent prong in the statute as a whole, he is also incorrect. It criminalizes a person who uses a minor, "*with the intent that such minor engage in*, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a) (emphasis added).

Br. 18.) Miller is wrong. *Of course* there is an element of in-
tent embodied in an evaluation of whether an image is las-
civious. If there were not, the statute would criminalize a
mother taking a picture of her child in the bathtub or a doc-
tor taking a picture of a minor patient's pubic area for a med-
ical diagnosis. In both of those situations, the creator may be
intending to take a photograph of an "exhibition" of the mi-
nor's pubic area, but *not* a "lascivious" one. Whether the im-
age "arouses sexual desire" is informed by the intent of the
person creating the image.

That is not to say that the creator's subjective intent may
be wholly divorced from the image created.[3] But the two do
go hand-in-hand. Subjective intent—particularly of the *crea-
tor*—is a relevant, and quite probative, consideration. "Alt-
hough the primary focus in evaluating the legality of the

---

[3] We agree with Miller in the general proposition that the subjective in-
tent of the viewer cannot be the *only* consideration in a finding of lascivi-
ous. The statute does not criminalize Sears's catalogs because they are in
the hands of a pedophile. That is why courts have cautioned against the
sole use of the viewer's subjective intent in evaluating lasciviousness:

> We must, therefore, look at the photograph, rather than
> the viewer. If we were to conclude that the photographs
> were lascivious merely because [the defendant] found
> them sexually arousing, we would be engaging in con-
> clusory bootstrapping rather than the task at hand—a
> legal analysis of the sufficiency of the evidence of lasciv-
> iousness.

*United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989). Here, both the
videos themselves and Miller's subjective intent as the viewer *and* creator
inform the conclusion that the videos of the nude minors constitute a
lascivious exhibition of the pubic area.

charged photographs must be on the images themselves, the cases reveal that the intent and motive of the photographer can be a relevant consideration in evaluating those images." *Russell*, 662 F.3d at 843 (citations omitted).

Miller's intent is clear. He took substantial steps in modifying his basement, instructing girls to use the downstairs bathroom, and filming them in the shower. The steps Miller took to surreptitiously create the images undermine an inference that there was a legitimate purpose to his video production. *Cf. United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) ("[A] lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently."). Instead, the reasonable inference drawn by the fact finder is that he was creating the videos because they sexually excite him.

There were also videos introduced at trial of Miller engaged in intercourse with adult females, a video of a nude adult female in the bathroom, and a video of Miller masturbating while watching homemade pornography. These videos support the district court's finding that the filming of these nude minors was for the purpose of sexual arousal. *See United States v. Raney*, 342 F.3d 551, 558 (7th Cir. 2003) (finding homemade adult pornography relevant to the defendant's "intent to manufacture child pornography depicting identical acts"). And finally, after Miller's son found the videos the first time, Miller lied to cover up his behavior, supporting the reasonable inference that his videos were not made for a legitimate purpose. *Cf. Russell*, 662 F.3d at 837

(noting that the defendant "told [the minors] not to tell their mother").

Therefore, we find that the evidence is sufficient to sustain a conviction for sexual exploitation of children by the creation of a depiction that includes a lascivious exhibition of the genitals. *See United States v. Johnson*, 639 F.3d 433, 441 (8th Cir. 2011) (reinstating jury verdict and finding evidence of lasciviousness sufficient where the defendant set up a camera and then instructed female weightlifters to weigh themselves in the nude).

*B. Term of Imprisonment*

Next, Miller challenges his below-guidelines sentence of 18 years' imprisonment as both procedurally unsound and substantively unreasonable. It is not.

We first review whether there was a procedural error in sentencing *de novo*. *United States v. Annoreno*, 713 F.3d 352, 356–57 (7th Cir. 2013). If we are satisfied that there was no procedural error, we then review the substantive reasonableness of the sentence for an abuse of discretion. *Id.*

For the procedural challenge, we make sure that the district court calculated the correct guidelines range, considered the 18 U.S.C. § 3553(a) factors, and adequately explained the chosen sentence. *Id.* at 357. A district court is not required, however, to enumerate and provide an explanation for each § 3553(a) factor. *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1047 (7th Cir. 2005). Instead, "we regularly affirm sentences where the district judge does not explicitly mention each mitigation argument raised by the defendant," *United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010), as long as it gave "meaningful consideration to the relevant factors in

light of the individual circumstances of the case." *United States v. Grigsby*, 692 F.3d 778, 791 (7th Cir. 2012) (internal quotation marks omitted).

Miller argues that the district court committed procedural error by not considering all of the § 3553(a) factors. He claims that "there is no evidence or reference suggesting that [Miller] is a particular danger to others, has a high likelihood of recidivism, or that treatment would likely be unsuccessful" and that "[t]he court did not address whether there was a less restrictive means to satisfy the seriousness of the offense, promote respect for the law, provide adequate deterrence, or protect the public." (Appellant Br. 26.)

We may swiftly reject Miller's stock argument. Although the district court did not explicitly list each § 3553(a) factor, it gave meaningful consideration to the relevant factors. It considered that Miller had made a sincere apology, was remorseful, and had a limited criminal history. It contrasted that, however, with the seriousness of Miller's offense, in particular the detrimental effect on the victims. It also considered the circumstances of the offense, which required extensive preparation including cutting a hole, scraping off the mirror, and filming over a long period of time, explaining that Miller's conduct was far worse than just a "lapse in judgment." Given that discussion, the district court did not commit a procedural error in its consideration of the § 3553(a) factors.

Because there was no procedural error, we next evaluate the substantive reasonableness of Miller's sentence. Because "[i]t is hard to conceive of below-range sentences that would be unreasonably high," *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005), there is a nearly irrebuttable presumption

that a below-range sentence is reasonable. *See United States v. Jackson*, 598 F.3d 340, 345 (7th Cir. 2010) ("We have never deemed a below-range sentence to be unreasonably high." (internal quotation marks omitted)).

Miller has not rebutted that presumption. In fact, he has offered no specific arguments as to why the sentence the district court imposed should have been different. He balks at being labeled a "felon," having to "register as a sex offender, face restrictions on where he can live, [and] face restrictions on the jobs he can work." (Appellant Br. 27–28 (citations omitted).) But Miller does not explain how any of these limitations make his sentence unreasonable. Had the district court sentenced him to the statutory mandatory minimum of 15 years, Miller would still be subject to these same limitations. Miller's objections to the stigma of his conviction are insufficient grounds for finding that the sentence imposed is unreasonable.

Miller next argues that after considering "the likelihood to reoffend, the option of treatment, the ability to supervise [Miller] in a less restrictive setting than the Federal Bureau of Prisons, and many others, the district court did impose a sentence greater than necessary." (*Id.* at 28–29.) But Miller does not explain how any of those considerations make his below-guidelines sentence unreasonable. Are we to take him at his word that he is not likely to reoffend? The opposite conclusion is quite reasonable given that Miller continued to videotape minor girls even *after* his son caught him doing so.

Finally, Miller asks us to consider the punishment he would have received had he been charged in state court. According to Miller, in Illinois, he would have been guilty of "unauthorized video recording," 720 ILCS 5/26-4, which is

punishable by 2–5 years' imprisonment. He argues that "[i]t is difficult to reasonably reconcile the possible punishment administered by the State of Illinois as compared to the mandatory minimum sentence of 15 years required to be imposed in federal court." (Appellant Br. 29.) We disagree.

Miller was convicted of sexual exploitation of children, *not* unauthorized video recording. It is strange to suggest that those two offenses are comparable in seriousness. Miller's argument only reinforces the district court's concern that Miller "think[s] that maybe these young people weren't victims because they didn't know that they were the subject of your viewing or videotaping." Miller is free to express his concern about the federal mandatory minimum sentence to Congress. His concern does not, however, make his below-guidelines sentence unreasonable.

*C. Conditions of Supervised Release*

Miller also challenges three conditions of his supervised release: (1) notification of risk; (2) no contact with minors; and (3) submission to physiological testing.

We review any conditions to which the defendant objected in the district court for an abuse of discretion. *United States v. Poulin*, 809 F.3d 924, 930 (7th Cir. 2016). Any conditions uncontested in the district court are reviewed only for plain error. *Id.*

*1. Notification of Risk*

The district court, in response to Miller's objection, modified the notification-of-risk condition to require that Miller "allow *probation* to notify … areas or people or agencies frequented or attended by minors" of "any risk associated with [Miller's] history."

Miller, parroting *United States v. Thompson*, 777 F.3d 368, 379 (7th Cir. 2015), first argues that the condition is vague because it is not clear what "history" and "risk" mean. Our case law has been critical of vague terms like "risk." But our criticism has been guided by the principle that a defendant "is entitled to special conditions that generally apprise him of what conduct is lawful and what could land him back in prison for violating his supervised release conditions." *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014).

There is no such problem here. To comply with this condition of supervised release, Miller does not have to do *anything* besides give permission to probation to notify third parties. The only way Miller could violate the condition is by withholding consent. That requirement is not vague.

Relying on *United States v. Bonnano*, Miller next argues that the condition is an improper delegation of authority to probation. 146 F.3d 502, 511 (7th Cir. 1998). *Bonnano* is inapposite. In *Bonnano*, we held that the district court could not delegate to probation the discretion to determine the number of random drug tests the defendant had to take. *Id.* at 510–11. The delegation was improper because the statute authorizing drug tests "requires that *the court* determine the number of drug tests to which the defendants must submit." *Id.* at 511; *see also* 18 U.S.C. § 3583(d). There is no similar statutory requirement with respect to the notification-of-risk condition.

Furthermore, the district court limited the discretion of probation in response to Miller's vagueness objection. It limited notification to places "frequented or attended by minors" and indicated that it was thinking of "day camps, camps, scouting, little leagues, those types of things." Alt-

hough we disapprove of conferring "probation officers with essentially unlimited discretion[,] … at some point, we must fairly presume [the defendant]'s probation officer will apply the conditions in a reasonable manner." *United States v. Kappes*, 782 F.3d 828, 857 (7th Cir. 2015) (third alteration in original) (citation and internal quotation marks omitted). We think the district court gave sufficient instructions for the probation officer to exercise his discretion to determine the places that may need to be notified of the risk Miller poses to minors. *Cf. United States v. Bloch*, No. 15-1648, 2016 WL 3361724, at *10 (7th Cir. June 17, 2016) (finding district court's explanation of the term "elsewhere" to mean "a 'public place,' such as a Starbuck's coffee shop" provided probation with sufficient guidance). Should the probation officer abuse his discretion in making those determinations, Miller may bring that to the district court's attention. *Kappes*, 782 F.3d at 857–58.

*2. No Contact with Minors*

Miller also challenges the condition that he not have any contact with "any person under the age of 18" unless it is supervised, "in the course of normal commercial business," or "unintentional incidental contact." The district court refused to make an exception for children related to Miller because one of the victims was the half-sister of his younger son.

Miller argues that the condition interferes with his right to familial association. We note first that Miller is serving an 18-year term of imprisonment, so any minor children he may have now will no longer be minor age upon his release from custody. To the extent that Miller quibbles with the condition because of hypothetical minor female relatives, we think the

condition is substantially justified given that one of the vic-
tims was related to him. With respect to hypothetical minor
male relatives, Miller's argument is "too contingent to be
ripe for review." *See Kappes*, 782 F.3d at 859.

Miller's remaining arguments with respect to the no-
contact condition were not raised to the district court, and so
we review them for plain error only. Miller argues that he
"cannot be sure whether contact covers incidental contact"
and that he "cannot know whether this is a strict liability
condition." (Appellant Br. 34.)

The condition expressly excludes from the no-contact
provision any "unintentional incidental contact." If Miller is
confused as to whether the condition covers incidental con-
tact, he need only read the condition. The same goes for the
*mens rea* requirement; unintentional contact is excluded from
the no-contact provision.

Miller also argues that the word "contact" is unreasona-
bly vague because he "cannot be sure whether contact is
physical contact, contact by telephone, and/or contact by
email or letter." (*Id.* at 34.) Uncertainty regarding the method
of contact is quite different from our prior cases invalidating
no-contact provisions. *See, e.g.*, *Thompson*, 777 F.3d at 376. In
*Thompson*, we emphasized that the condition would crimi-
nalize incidental and unintentional contact—a concern alle-
viated in this case by the district court's modification. We did
not, however, take issue with "contact" being vague or over-
broad with respect to the *method* of contact, nor has Miller
cited any cases where we have. That is because it is not
vague; the condition prohibits all *contact*. Different methods
of contact are still contact.

Miller's final challenge to the no-contact provision is that it is overbroad because it prohibits him from contacting minor males and prepubescent females, even though there is no evidence that he is attracted to either group. We agree with Miller that this one aspect of the condition is overbroad. But Miller has not established "that a failure to correct [the error] would jeopardize the fairness, integrity, or public reputation of the criminal proceedings," *United States v. Silvious*, 512 F.3d 364, 371 (7th Cir. 2008), and so he has not justified vacating his sentence. This is not a case where multiple errors in the conditions of supervised release occurred, and so we decline to vacate Miller's sentence for correction of this error, especially in light of the fact that Miller is not without a remedy: Miller is free to request modification of the condition pursuant to 18 U.S.C. § 3583(e)(2).

*3. Physiological Testing*

The final condition of supervised release that Miller challenges is the one requiring him to submit to physiological testing to the extent ordered by his Sex Offender Treatment Program. He argues that the condition is "impermissibly vague, overbroad, and unnecessary," "a greater than necessary deprivation on his liberty," and "not sufficiently tied to … § 3553," in large part because it may subject him to plethysmograph testing. (Appellant Br. 32.) Miller also argues that physical testing may infringe his ability to exercise his Fifth Amendment right against self-incrimination.

We rejected arguments similar to Miller's in *Kappes*, 782 F.3d at 855. We held that any challenge to the hypothetical testing the defendant may be forced to undergo "involves too many contingencies to make the issue ripe for review." *Id*. We also rejected Miller's argument with respect to invok-

ing Fifth Amendment rights, explaining that "[a] defendant on supervised release retains the privilege to invoke his Fifth Amendment rights." *Id.* at 855–56.

Miller offers no reason why we should not hold that his speculative challenges are not ripe. The closest he comes is by implying that his probation officer would unfairly interpret this condition of supervised release so that he could revoke his supervised release and relieve himself of supervising Miller during the time he is back in prison. We believe that is an unfair characterization of probation officers generally and should not constitute grounds for this court to consider speculative concerns about supervised-release conditions. Should Miller be given a vindictive probation officer whose sole goal is to return him to prison, we expect that he would bring that to the district court's attention.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Miller's conviction, terms of imprisonment and supervised release, and conditions of supervised release.