In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2489

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHANNON DONOHO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:19-cr-00149 — **William M. Conley**, *Judge.*

ARGUED OCTOBER 27, 2022 — DECIDED AUGUST 4, 2023

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* After downloading images of child pornography from an internet address associated with defendant Shannon Donoho, law enforcement officers executed a search warrant at his Wisconsin residence and recovered digital images of child pornography and evidence that he had produced child pornography. In July 2020, Mr. Donoho was charged by superseding indictment with possession of child

pornography and production and attempted production of child pornography. A jury convicted him on all counts.

Mr. Donoho now appeals his conviction on all counts but the possession charge, contending that the jury was improperly instructed and that there was not sufficient evidence to support the jury's verdict. For the reasons stated below, we affirm.

## I

## A

## BACKGROUND

In July 2018, law enforcement officers executed a search warrant at Mr. Donoho's residence in Tomah, Wisconsin. They recovered a hard drive with files depicting child pornography, two GoPro cameras, and computer devices with software for editing GoPro videos. As relevant here, forensic examination of these devices revealed eight videos and images of nude or partially nude minor females. Based on these videos and images, a grand jury indicted Mr. Donoho on one count of attempted production of child pornography and seven counts of production of child pornography in violation of 18 U.S.C. § 2251(a).[1]

Count 1 of the indictment charged Mr. Donoho with attempted production of child pornography. The charged video depicts Mr. Donoho sitting on a toilet seat in his residence. Holding a phone in one hand, he places a GoPro camera

---

[1] Mr. Donoho was also charged and convicted on one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 2). He does not challenge his possession conviction on appeal, and the images underlying that charge are not related to those at issue here.

underneath the bathroom sink and adjusts it to face the toilet seat. Mr. Donoho exits, and a prepubescent female, Minor A, enters the bathroom, pulls down her pants, and sits on the toilet. Her buttocks are briefly visible, but her genitals are not visible. Minor A leaves the bathroom, and Mr. Donoho returns, sits on the toilet, looks at his phone, and reaches to turn off the camera.

Count 3 charged Mr. Donoho with production of child pornography based on a GoPro video taken at the residence of his former girlfriend. In the video, the camera appears to be placed on top of the tub faucet in the shower. Minor B, the niece of Mr. Donoho's former girlfriend, enters the shower and is completely nude. The camera captures her body from chest to feet as well as areas of the shower, tub, and curtain. At one point, Mr. Donoho enters the bathroom, and Minor B is heard asking him whether the camera is on; he flips open the shower curtain and falsely tells her it is not recording.

A final video, charged in Count 4, begins with Mr. Donoho walking out of the same bathroom as the Count 3 video. The camera appears to be situated in a basket, facing the toilet seat. Minor B enters the bathroom, takes off her clothes and places them on the toilet seat, and gets into the shower. The camera captures a shot from her navel to her thighs.

Counts 5 through 9 charged still images of a nude minor female, likely Minor B, in the same bathroom. In the Count 5 image, the nude minor appears to be stepping out of the shower. The camera captures her neck to her knees, depicting her vagina, breasts, and nipples. The Count 6 image shows a partially nude minor with one leg lifted; her bare buttocks and pubic area are visible from behind. Her face is not visible. Count 7 charged an image showing a minor from chest to

thigh level; she is pulling down her underwear, and her pubic area is clearly visible.

The images in Counts 8 and 9 depict Mr. Donoho with a nude minor. In the first image, the camera again appears to be situated in a basket, facing the toilet. Mr. Donoho's legs and shorts are visible, and a minor is seated on his lap. The minor has one leg in the air and one leg down, and her vagina is visible. The second image is similar: The minor is again seated on Mr. Donoho's lap, but both of her legs are spread in the air. The minor's vagina and anus are visible.

## B

### PRIOR PROCEEDINGS

A person violates 18 U.S.C. § 2251(a) if he "employs, uses, persuades, induces, entices, or coerces any minor to engage in … any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." A separate provision defines "sexually explicit conduct" to mean "sexual inter-course," "bestiality," "masturbation," "sadistic or masochistic abuse," or "lascivious exhibition of the anus, genitals, or pu-bic area." *Id.* § 2256(2)(A)(i)–(v).

Mr. Donoho and the Government engaged in extensive pretrial litigation over how the jury should be instructed on the offense. Specifically, they disputed what constituted "sex-ually explicit conduct" for purposes of § 2251(a) and whether the statute required the Government to prove that a defend-ant had caused a minor to engage in sexually explicit conduct.

### 1

Because the Government's theory of the case was that Mr. Donoho had produced or attempted to produce visual

depictions of "sexually explicit conduct" in the form of "lascivious exhibition[s] of the anus, genitals, or pubic area" of the minors, the parties argued at length over the correct instruction for determining what constitutes a "lascivious exhibition." In June 2020, a magistrate judge prepared draft jury instructions explaining that, in deciding whether a visual depiction was a lascivious exhibition within the meaning of § 2256(2)(A)(v), the jury "must consider the overall content of the visual depiction, while taking into account the age of the child depicted. The exhibition of genitals or pubic area can encompass visual depictions of a child's genital or pubic area even when those areas are covered by clothing."[2] The instruction added that the jury could consider the six non-exhaustive factors from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). These so-called *Dost* factors have been endorsed by many courts of appeals as helpful guides for juries in the "lascivious exhibition" inquiry. The factors, as presented by the magistrate judge, are:

1. Whether the focal point of the visual depiction is on the child's genitals or pubic area;
2. Whether the setting of the visual depiction is sexually suggestive, that is, in a place or in a pose generally associated with sexual activity;
3. Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4. Whether the child is fully or partially clothed, or nude;

---

2 R.37-3 at 16.

    5.  Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

    6.  Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.[3]

In their written responses to the draft instructions, the parties did not address the inclusion of the *Dost* factors, but the magistrate judge again raised the issue at a pretrial conference. The Government stated that it was not opposed to their inclusion, but it noted that our case law revealed a "preference" not to use them.[4] Mr. Donoho asked that the factors be included. The magistrate judge left the factors in the draft instructions for the time being.

Mr. Donoho later changed course and requested a "modified *Dost* instruction."[5] Specifically, he asked that the court instruct the jury that "more than nudity is required to make an image lascivious" and then instruct the jury on the first, second, third, and fifth *Dost* factors.[6] He argued that the fourth factor, concerning nudity, would cause confusion, because *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008), had established that mere nudity was not sufficient. And he was most concerned with the sixth factor, which, "[i]nstead of directing the jury to look at a specific attribute in the image,"

---

[3] *Id.*

[4] R.142 at 14.

[5] R.57 at 1.

[6] *Id.* at 3.

would invite the jury to decide whether the image was "intended or designed to elicit a sexual response in the viewer."[7] Alternatively, Mr. Donoho sought an instruction following *Griesbach*'s definition: "[M]ore than nudity is required to make an image lascivious; the focus of the image must be on the genitals or the image must be otherwise sexually suggestive."[8]

In response, the Government, too, changed its position. It now opposed the inclusion of the *Dost* factors and observed that we had "discouraged their routine use, in part because the factors may not helpfully clarify the statutory standard, which is clear enough on its face."[9] Jurors should simply apply a "commonsense understanding of 'lascivious exhibition,'" and the *Dost* factors represented only "a partial list of things jurors could consider."[10]

The district court addressed the issue with the parties in a pretrial hearing. The court decided to remove the *Dost* factors and to instruct the jury as follows:

> Mere nudity is not enough to make an image a lascivious exhibition of the genitals or the pubic area, nor is complete nudity a requirement. A lascivious exhibition of the genitals or pubic area is an exhibition that calls attention to the

---

[7] *Id.*

[8] *Id*. at 5 (quoting *Griesbach*, 540 F.3d at 656).

[9] R.59 at 2.

[10] *Id*. (quoting *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014)).

genitals or pubic area for the purpose of elicit-
ing a sexual response in the viewer.[11]

Unhappy with that instruction, the Government again re-
quested a modification. It asked the court to use the original
draft instruction but without the *Dost* factors. In the Govern-
ment's view, the district court's new instruction "place[d] ar-
tificial limits" on the statutory standard by focusing on
whether an image "calls attention" to the genitals or pubic
area; instead, the focus should be on the "overall content" of
the image.[12] The Government was so displeased with this new
instruction that, although it opposed using the *Dost* factors in
principle, it preferred a list of those six factors to the court's
new proposal.

Mr. Donoho again modified his views. His preference now
was the definition set forth in *Griesbach*. Failing that, he
wanted a *Dost* instruction but without the sixth factor on in-
tent. (He no longer objected to the fourth factor concerning
full or partial nudity.) Again, he emphasized his concerns
with the intent factor: In his view, the producer's or viewer's
intent was not sufficient to render an image "lascivious" "if
the image [wa]s not sexually suggestive or focused on the
genitals."[13]

The Government responded that, if the *Dost* factors were
to be used at all, "all six factors should be included, along with

---

[11] R.66-3 at 14.

[12] R.67 at 4.

[13] R.71 at 4.

the caveat that these factors are not an exclusive list."[14] The Government further noted that, whether or not the factors were included in the instruction, it would "surely be referencing" the substance of these factors in closing argument, including the intent factor.[15]

The district court ultimately instructed the jury as follows:

> In order to determine whether a visual depiction is a *lascivious exhibition of the anus, genitals, or pubic area*, you must consider the overall content of the visual depiction, while taking into account the age of the child depicted. Mere nudity does not make an image lascivious; instead, the image must tend to arouse sexual desire by the viewer. Accordingly, the focus of the image must be on the anus, genitals, or pubic area or the image of the anus, genitals, or pubic area must be otherwise sexually suggestive. Ultimately, whether the government has proven an image is lascivious beyond a reasonable doubt is left to you to decide on the facts before you applying common sense.[16]

Although Mr. Donoho objected to the sentence stating that "the image must tend to arouse sexual desire by the viewer," the court denied his request to remove that language at the final pretrial hearing.

---

[14] R.72 at 3.

[15] *Id.*

[16] R.116 at 100–01.

Finally, after the parties made their closing arguments—
in which Mr. Donoho insisted that the jury should consider
whether the conduct depicted was sexually explicit under a
"community standard" and the Government argued that the
relevant inquiry was whether the images were intended to
arouse the viewer—the court explained to the jury that nei-
ther the Supreme Court nor the Seventh Circuit had given an
answer as to which of these definitions controlled. The court
urged the jury to "consider the aspects of the image itself, the
setting, the pose assumed by the minor and any other persons
depicted," as well as "the photographer's state of mind."[17] Ul-
timately, the jury was required "to decide whether it [wa]s a
sexually explicit image," and that determination was left to it
"as the conscience, the lay conscience, of society."[18]

2

In August 2020, we decided *United States v. Howard*, which
addressed a "novel question about the interpretation of
§ 2251(a)." 968 F.3d 717, 721 (7th Cir. 2020). There, we ex-
plained that a defendant does not "use[]" a minor to engage
in sexually explicit conduct when the defendant only uses a
minor "as an object of sexual interest for the purpose of mak-
ing a video of *himself* masturbating and lasciviously display-
ing his genitals." *Id.* at 720 (emphasis added). Accordingly, we
vacated the defendant's § 2251(a) conviction for recording
videos of himself masturbating next to his sleeping, clothed,
nine-year-old niece because the jury instructions had not

---

[17] *Id.* at 143–44.

[18] *Id.* at 144.

required the Government to prove any sexually explicit conduct *of the minor*.

Soon after our decision in *Howard*, the district court ordered the parties to provide input on whether it needed to modify its jury instructions in light of our construction of the term "uses" in § 2251(a). Mr. Donoho contended that *Howard* had interpreted the term "uses" in § 2251(a) to mean "causes," such that the Government could only prove a violation of the statute by proving that a defendant caused a minor to engage in sexually explicit conduct. Thus, the court was required to instruct the jury that it could convict only if it found that the defendant caused the minor to engage in the depicted conduct. The Government argued, instead, that *Howard* merely clarified that it must be the minor—and not solely the defendant—who is engaged in sexually explicit conduct. In its view, *Howard* had not established a causation element under § 2251(a).

The district court determined that *Howard* did not require the Government to "prove the type of causal relationship that [Mr. Donoho] s[ought] to read into" the decision, and it declined to replace the word "used" with "caused" in the instructions.[19] Although the district court conceded Mr. Donoho's point that *Howard* "created an oddity in light of its apparent construction of the word 'use' as cause," it thought our treatment of the issue was due to the peculiar facts of that case.[20] Accordingly, the jury was instructed to convict if it found that Mr. Donoho "knowingly used [the

---

[19] R.82 at 5.

[20] R.148 at 19.

minor] to engage in sexually explicit conduct for the purpose of producing a visual depiction" of that conduct.[21]

### 3

The case was tried to a jury in May 2021. At the close of the Government's case, Mr. Donoho moved for judgment of acquittal under Federal Rule of Criminal Procedure 29(a) as to Counts 1 and 3 through 9. The court ordered trial to proceed, and the jury convicted on all nine counts.

After the verdict, Mr. Donoho renewed his Rule 29 motion, challenging the court's instruction in Counts 1 and 3 through 7 as inconsistent with *Howard* and challenging the sufficiency of the evidence for Counts 1 and 3 through 9. The court denied the motion.

The district court sentenced Mr. Donoho to 210 months' imprisonment per count for Counts 1 and 3 through 9, to run concurrently. On Count 2, the possession charge, the court imposed 120 months' imprisonment, to run concurrently with the other term.

## II

### DISCUSSION

Mr. Donoho now challenges the district court's jury instructions and the sufficiency of the evidence. Because his sufficiency challenge is premised on his understanding of the proper legal standards on which the jury should have been instructed, we begin by addressing his challenge to the jury instructions.

---

[21] R.116 at 98–99.

## A

"When the challenge to a jury instruction implicates a question of law, our review is *de novo*." *United States v. Gibson*, 530 F.3d 606, 608–09 (7th Cir. 2008). We afford, however, the district court substantial discretion in formulating "the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *Id.* at 609 (quoting *United States v. Lee*, 439 F.3d 381, 387 (7th Cir. 2006)).

Mr. Donoho presents two primary arguments. First, he contends that the district court's instruction was inconsistent with our decision in *United States v. Howard*, 968 F.3d 717 (7th Cir. 2020), because it failed to require proof that Mr. Donoho took some action to cause the minors to engage in the depicted conduct. Second, he contends that the court improperly instructed the jury on the meaning of "lascivious exhibition" because the instructions permitted the jury to consider his intent in creating the images and failed to require that the charged images depict conduct connoting sex acts with the minors. We address each argument in turn.

### 1

Mr. Donoho first submits that the jury instruction was inconsistent with *Howard*. In that case, we vacated the § 2251(a) conviction of a defendant who had created videos of himself masturbating next to his nine-year-old niece while she was sleeping fully clothed. The trial court had instructed the jury that to convict Howard it had to find that he "knowingly used [his niece] to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." *Id.* at 720. The Government's theory of the case was that Howard had "'used' his niece in the sense that she was the 'focus' of

his sexual attraction and 'the reason' he masturbated and exhibited his genitals in the videos." *Id*. at 721. In the Government's view, a person violated § 2251(a) by making a video "of *his own* solo sexually explicit conduct" if he "'use[d]' a child as an object of sexual interest." *Id*. We concluded that such an interpretation of the statute was a "strained" one, explaining that "[t]he most natural and contextual reading of the statutory language" requires the Government to prove that a defendant "cause[d] *the minor* to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct." *Id.*

Focusing on this last sentence, Mr. Donoho reads *Howard* as establishing a rigid causation element. In his view, after *Howard*, "uses" means "causes"; a defendant only "uses" a minor in violation of § 2251(a) if he "took some action to cause the minor to engage in certain conduct."[22] Mr. Donoho maintains that, because the district court did not give any sort of causation instruction in this case, the case went to the jury under legally erroneous instructions.

We cannot accept this argument. The district court correctly understood that our holding in *Howard* was concerned with the particular facts presented in that case, where "it was the defendant who was engaged in sexually explicit activity" rather than the minor.[23] Indeed, we already have observed in a later case that *Howard* simply held that § 2251(a) "requires that the offender create images that depict a minor, and not the offender alone, engaged in sexually explicit conduct."

---

[22] Appellant's Br. 28, 43–44.

[23] R.148 at 9.

*United States v. Sprenger*, 14 F.4th 785, 791 (7th Cir. 2021). So long as the visual depiction at issue depicts *a minor* engaged in sexually explicit conduct, a defendant may "use[]" the minor within the meaning of § 2251(a) without *causing* the minor to act in any particular way. To hold otherwise, as Mr. Donoho urges, would overread our decision in *Howard* and would improperly limit the scope of § 2251(a). *Howard*'s holding is more limited: It makes clear that a defendant is liable under § 2251(a) only if the defendant's "use[]" of a minor entails the minor's engagement in sexually explicit conduct.

The district court's instruction on "use" was not erroneous.

2

Mr. Donoho also contends that the district court instructed the jury incorrectly on the term "lascivious exhibition." He submits that the jury instructions were erroneous because they permitted consideration of his intent and failed to require that the charged images depict conduct connoting sex acts with the minor.

a

The district court did not err in instructing the jury that it could consider Mr. Donoho's intent in determining whether the images were lascivious. Our cases provide a well-established approach to the construction of the term "lascivious exhibition" in § 2256(2)(A), and that case law forecloses Mr. Donoho's argument. In *United States v. Russell*, we explained that "a lascivious display is one that calls attention to the genitals or pubic area *for the purpose of eliciting a sexual response in the viewer*." 662 F.3d 831, 843 (7th Cir. 2011) (citing *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994), and

*United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011)) (emphasis added); *see also United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008) (explaining that, for an image to depict a lascivious exhibition, "the focus of the image must be on the genitals or the image must be otherwise sexually suggestive"). *Russell* squarely held that evidence of the defendant's intent was "a relevant consideration" in evaluating the images at issue. 662 F.3d at 843. In reaching that conclusion, we relied on an earlier decision, *United States v. Burt*, 495 F.3d 733, 741 (7th Cir. 2007), which similarly had held that a defendant's prior acts of molestation were admissible evidence to show that the defendant's photographs of nude children had been created to elicit a sexual response in the viewer and not for legitimate, nonsexual purposes. *Russell* and *Burt* plainly recognize a defendant's intent in creating images as relevant to evaluating whether the depicted conduct constitutes a "lascivious exhibition" of the genitals.

Mr. Donoho maintains, however, that introducing intent as a consideration distorts the statute's text and structure: The statute proscribes the production of images depicting sexually explicit conduct, § 2251(a), and a "lascivious exhibition" is simply one species of sexually explicit conduct, § 2256(2)(A)(v). As such, Mr. Donoho contends, § 2251(a) does not make it unlawful to produce lascivious *images*; it prohibits instead the production of images *depicting* lascivious exhibitions. And he insists that his intent in viewing or creating *images*—even if he did so for the purpose of sexual arousal—does not transform the conduct depicted in those images into a lascivious exhibition. Therefore, in his view, the district court should not have allowed the jury to consider his intent in evaluating the images.

We cannot accept this argument. It is true that lasciviousness must be an objective quality, but the purpose for which certain conduct is captured in an image is a relevant factor in an objective assessment of the lasciviousness of the depicted conduct. We have recognized that conduct often takes on a different significance by virtue of its being visually recorded. For instance, we have observed that otherwise nonsexual settings like showers and bathtubs "are frequent hosts to fantasy sexual encounters as portrayed on television and in film." *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (quoting *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010)). In the act of recording a visual depiction, the manner in which the depiction is framed very often changes the characterization of the portrayed conduct. For example, excluding the face and head of the photo's subject and focusing instead on the genitals, *see id*. at 807–08, as many of Mr. Donoho's images did, can alter significantly the relationship between image and depicted conduct. The conduct is context dependent. Consequently, we have held that "the primary focus in evaluating the legality of the charged photographs [or videos] must be on the images themselves," and "at least in some circumstances, evidence of motive and intent will help to place an image in context." *Russell*, 662 F.3d at 843–44. The reason why the producer of the image elected to emphasize a particular gesture, pose, or expression can help the trier of fact to assess the contextual significance of the conduct that is depicted. *Schuster*, 706 F.3d at 807–08; *United States v. Holmes*, 814 F.3d 1246, 1251–52 (11th Cir. 2016). "[D]epictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction." *Holmes*, 814 F.3d at 1251–52. "[A] visual depiction of a minor is 'a

lascivious exhibition because the photographer array[s] it to suit *his* peculiar *lust*.'" *United States v. Wells*, 843 F.3d 1251, 1254 (10th Cir. 2016) (quoting *United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989)).

Indeed, we already have rejected squarely the argument that intent is an improper consideration in the trier of fact's determination as to whether the image is "lascivious." In *United States v. Miller*, we observed that the term "lascivious" means "tending to arouse sexual desire." 829 F.3d 519, 524 (7th Cir. 2016) (quoting Webster's Third New Int'l Dictionary). Consideration of a creator's intent, then, is "*[o]f course …* embodied" in a determination of whether the depicted conduct is lascivious: "Whether the image 'arouses sexual desire' is informed by the intent of the person creating the image." *Id.* at 525–26. *Miller* also made clear, however, that "subjective intent … cannot be the *only* consideration"; an image does not depict a lascivious exhibition "merely because [the defendant] found [it] sexually arousing." *Id.* at 526 n.3 (quoting *United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989)).

The district court did not err in instructing the jury that it could consider whether the images were intended to arouse sexual desire.

b

We now turn to Mr. Donoho's claim that the district court should have instructed the jury to convict only if it found that

the images depicted "conduct that connotes sex acts involving a minor, evaluated objectively."[24]

Our case law establishes that the question "whether an image is lascivious 'is left to the factfinder to resolve, on the facts of each case, applying common sense.'" *Miller*, 829 F.3d at 525 (quoting *Russell*, 662 F.3d at 843). Or, as the district court put it, it was for the jury to decide this question "as the conscience … of society."[25] This instruction adequately framed the inquiry for the jury that, as the trier of fact, had the ultimate responsibility to determine whether the image was lascivious.

Mr. Donoho submits, however, that the instruction should have contained a narrower definition of the statutory term "lascivious." Specifically, the jury should have been instructed that the image in question had to depict conduct connoting commission of a sex act with a minor. Mr. Donoho draws this conclusion from the decision of the District of Columbia Circuit in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022). In his view, in a series of First Amendment cases addressing the constitutionality of obscenity and pornography statutes, the Supreme Court narrowed the range of regulable child pornography material to "hard core" depictions of sexual abuse of children. *See id.* at 680–84. Mr. Donoho, like *Hillie*, seizes on the term "hard core" in this line of Supreme Court cases and suggests that this term represents an independent restriction on the definition of "lascivious exhibition." *See id.*

---

[24] Appellant's Br. 28. The Government argues that Mr. Donoho forfeited this argument and is therefore entitled only to plain-error review. Because we find no error, plain or otherwise, we need not address forfeiture.

[25] R.116 at 144.

at 682. Then, relying on the canon of *noscitur a sociis*, he insists that "lascivious exhibition" is narrowed by the other categories of sexual conduct enumerated in § 2256(2)(A). *See id.* at 685. Thus, he maintains, the broader definition of lasciviousness on which the jury was instructed was legally erroneous and allowed the jury to convict on insufficient evidence.[26]

We respectfully disagree with this reasoning. In crafting § 2251(a), Congress employed a well-established lexicon. Ever since its decision in *Miller v. California*, 413 U.S. 15, 24–25 (1973), the Supreme Court has considered "[p]atently offensive representation or descriptions of … lewd exhibition of the genitals" a sufficiently concise and definite description of prohibited obscene conduct. This category of conduct, the

---

[26] To the extent Mr. Donoho relies on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), to argue that the depicted conduct must *itself* constitute child sexual abuse, his position is entirely without merit. That case held that the harm to children resulting from "virtual child pornography" was too attenuated for the ban of this material to withstand First Amendment scrutiny. *Id.* at 250. But it does not follow that the conduct depicted in an image must inflict immediate harm to the child in the form of physical, sexual abuse. The mere depiction of a child as a sexual object inflicts a range of harms on the child, and Congress intended to combat these harms in all their forms when it enacted § 2251. *See, e.g., United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987) ("The crime is the offense against the child — the harm 'to the physiological, emotional, and mental health' of the child; the 'psychological harm'; the invasion of the child's 'vulnerability.' These harms collectively are the consequential damages that flow from the trespass against the dignity of the child." (citations omitted)); *Knox*, 32 F.3d at 750 ("The harm Congress attempted to eradicate by enacting the child pornography laws is present when a photographer unnaturally focuses on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles. The child is treated as a sexual object ….").

Court clarified, fits within the "'hard core' sexual conduct" that may be regulated without offending the First Amendment. *United States v. 12 200-ft. Reels of Super 8MM. Film*, 413 U.S. 123, 130 n.7 (1973). In *New York v. Ferber*, the Court found that a substantially identical prohibition, aimed specifically at material involving children, was sufficiently definite and "limited" even without a requirement that it be legally obscene. 458 U.S. 747, 751, 764 (1982); *see also id.* at 773 (describing a state child pornography statute—which covered a range of conduct substantially similar to the examples in *Miller*, including "lewd exhibition"—as "directed at the hard core of child pornography"). And when Congress employed the term "lascivious" in the federal child pornography statute, the Court gave it the same meaning as "lewd." *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992); *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994) (adopting the Ninth Circuit's reasoning as to "lascivious" but reversing in other respects).

In sum, the Supreme Court's decisions make clear that "lascivious exhibition" is *already* a sufficiently concise and definite description of prohibited depicted conduct. We see no basis for concluding that a further narrowing construction must be placed upon that term, particularly in the realm of child pornography, where Congress and the States enjoy "greater leeway" in regulating even non-obscene depictions. *Ferber*, 458 U.S. at 756; *see also United States v. Frabizio*, 459 F.3d 80, 85–86 (1st Cir. 2006) ("The statutory standard needs no adornment. The Supreme Court has made clear that the Constitution does not require additional glossing or narrowing of the standard, and Congress has chosen not to employ any additional glossing." (citation omitted)). The Court's use of the term "hard core" certainly cannot be understood to be the

source of such a narrowing construction; that term is employed simply to refer to categories of "suitably limited and described" conduct, of which "lascivious exhibition" is one. *Ferber*, 458 U.S. at 764. We also do not believe that the associated-words canon can be invoked here to limit this term in the manner Mr. Donoho proposes, following the reasoning of *Hillie*. The term "lascivious exhibition" has its own meaning that is plainly related to, but distinct from, the other terms in § 2256(2)(A). *See Knox*, 32 F.3d at 745 ("[T]he ordinary meaning of the phrase 'lascivious exhibition' means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer."). This meaning is neither overbroad with respect to the other terms nor naturally construed in the narrow sense that Mr. Donoho proposes: to mean conduct connoting the commission of a sex act. *Cf. id.* (relying on the associated-words canon to reject a narrowing construction of "lascivious exhibition").

The district court's instruction on lascivious exhibition was consistent with the text of the statute and the decisions of the Supreme Court and this court.

## B

Mr. Donoho also contends that the evidence was not sufficient to support his convictions on Counts 1 and 3 through 7.[27] We review a sufficiency challenge *de novo*, viewing the evidence in the light most favorable to the Government. *United States v. Thomas*, 845 F.3d 824, 830 (7th Cir. 2017). Accordingly,

---

[27] Mr. Donoho's challenge to his convictions on Counts 8 and 9 was limited to the alleged error in the jury instructions. He does not challenge the sufficiency of the evidence on those counts.

we will "uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *United States v. Granados*, 142 F.3d 1016, 1019 (7th Cir. 1998)).

This sufficiency challenge is predicated on Mr. Donoho's proposed interpretation of the applicable legal standards. Because we have rejected these legal arguments, his arguments on the sufficiency of the evidence must fail. For the sake of completeness, we add that the Government presented ample evidence at trial that Mr. Donoho was the individual who hid and operated the GoPro cameras that captured visual depictions of the nude or partially nude minors. The video charged in Count 1 shows Mr. Donoho setting up and adjusting a camera. The Count 3 video records him acknowledging that there is a camera placed inside the shower as he falsely tells Minor B that it is not recording. The other charged videos and images also show that Mr. Donoho aimed the camera in directions that were likely to capture the minors nude and took steps to hide the camera from the view of the minors. Indeed, each of the images and videos in Counts 3 through 7 actually captured depictions of Minor B's pubic area or genitals, and the Count 1 video, which captured Minor A pulling down her pants to use the toilet, reflected an attempt to capture a depiction of her genitals or pubic area. The Government also presented evidence that Mr. Donoho had downloaded applications to his phone to control the GoPro cameras and to edit video footage for the purpose of creating the still images at issue in Counts 5, 6, and 7. Moreover, the jury saw evidence, related to the Count 2 possession charge, that Mr. Donoho possessed a large number of child pornography images unrelated to the images he himself had produced, and it could reasonably conclude from this that he had a sexual interest in

children. *See Schuster*, 706 F.3d at 808 (defendant's collection of child pornography "shed[] light on why [he] took the photograph of a nude boy's genitals"). Collectively, these facts allowed a jury to conclude that Mr. Donoho created these images and videos for the purpose of satisfying his sexual desires. *See Miller*, 829 F.3d at 526 (jury could find, based on the defendant's "substantial steps in modifying" the bathroom so that he could capture video of it, that he "creat[ed] the videos" of minor females showering "because they sexually excite[d] him").

In short, based on the content, setting, and framing of these images and videos and the steps Mr. Donoho took to capture them, *see Holmes*, 814 F.3d at 1252, a reasonable jury could find that he used or attempted to use Minor A and Minor B to create visual depictions of lascivious exhibitions of their genitals, anus, or pubic area. The evidence was therefore sufficient to support the jury's verdict of guilty on Counts 1 and 3 through 7.

## Conclusion

For these reasons, we affirm Mr. Donoho's convictions on Counts 1 and 3 through 9.

AFFIRMED

EASTERBROOK, *Circuit Judge*, concurring. Shannon Donoho is a liar and invader of young girls' privacy. He has committed torts actionable under Wisconsin's law and may well have committed crimes defined by that state's law. But he did not produce child pornography, in violation of 18 U.S.C. §2251(a).

I concur in the judgment only because *United States v. Miller*, 829 F.3d 519 (7th Cir. 2016), affirms a conviction based on hidden-camera movies of young girls taking showers. *Miller* defines "lascivious exhibition of the genitals" in a way that is hopelessly vague, leaving judges, prosecutors, jurors, and, most important, photographers, unable to determine what is and what is not lawful. On the one hand *Miller* says that the standard is objective; on the other hand it asserts that the photographer's intent and personal reactions, plus other ambulatory factors, must be considered. Well, the standard must be either objective or subjective, but *Miller* has things both ways. Laws are supposed to give notice so that people know what they may and may not do. Yet §2251(a), as understood in *Miller*, leaves everything to a jury's sensibilities. That is not how criminal law should work. A conclusion that someone is a scoundrel—a fair description of both Miller and Donoho—is not enough for criminal liability. See, e.g., *Ciminelli v. United States*, 143 S. Ct. 1121 (2023); *Kelly v. United States*, 140 S. Ct. 1565 (2020).

Images such as the ones Donoho produced appear in widely distributed films. That he lied to the girls about what he was doing does not change the images' nature. That Donoho may have found the images sexually exciting also can't suffice. Are films such as *The Blue Lagoon*, in which Brooke Shields appeared unclothed while only 15, child pornography because some viewers become sexually excited?

How about *Pretty Baby*, filmed when Shields was 12? Or Franco Zeffirelli's version of *Romeo and Juliet*, in which Olivia Hussey appeared naked at age 16?

True, the statute is limited to exhibitions of the genitals, but full frontal nudity is common in films and television; §2251(a) makes liability depend on a "lascivious exhibition" of the genitals, see 18 U.S.C. §2256(2)(A)(v)—which is to say, depicting the genitals in a sexually suggestive way. There is nothing sexually suggestive in the videos that Donoho made of girls taking showers and using the toilet.

*United States v. Hillie*, 14 F.4th 677 (D.C. Cir. 2021), amended, 39 F.4th 674 (2022), rehearing en banc denied, 38 F.4th 235 (2022), rejects this circuit's approach and reverses a conviction based on facts materially identical to Donoho's behavior. The law in some other circuits also is more favorable to Donoho than is *Miller*. See, e.g., *United States v. Brown*, 579 F.3d 672 (6th Cir. 2009); *United States v. Spoor*, 904 F.3d 141 (2d Cir. 2018).

I agree with the views expressed by Judge Katsas in *Hillie*. 38 F.4th at 236–41 (concurring in the denial of rehearing en banc). He explained: "A child who uncovers her private parts to change clothes, use the toilet, clean herself, or bathe does not *lasciviously* exhibit them. To be sure, a voyeur who secretly films a child engaged in such tasks may do so for his own sexual gratification, or for the gratification of others who will see the depiction. But the [statutory] definition turns on whether the exhibition itself is lascivious, not whether the photographer has a lustful motive in visually depicting the exhibition or whether other viewers have a lustful motive in watching the depiction." *Id*. at 237 (emphasis in original). The extensive

coverage of statutory meaning in *Hillie*'s multiple opinions makes it unnecessary for me to say more.